1
2
3
4                   UNITED STATES DISTRICT COURT

5                 NORTHERN DISTRICT OF CALIFORNIA

6

7   UNITED STATES OF AMERICA, et al.,

8                 Plaintiffs,                    Case No.  16-cv-06994-PJH

9          v.                                    **ORDER GRANTING RELATOR'S**
                                                 **MOTION FOR LEAVE TO FILE HIS**
10  BELL TRANSIT CORPORATION, et al.,            **SECOND AMENDED COMPLAINT**

11                Defendants.                    Re: Dkt. No. 67

12

13          Before the court is relator Steven Fallon's ("relator") motion for leave to file a

14  second amended complaint.  Dkt. 67.  Having read the parties' papers and carefully

15  considered their argument and the relevant legal authority, and good cause appearing,

16  the court hereby **GRANTS** relator's motion.

17                              **BACKGROUND**

18          On December 6, 2016, relator filed the instant qui tam action against Hayward

19  Unified School District ("HUSD"), certain of its employees (the "Individual Defendants"),

20  and three private entities, Bell Transit Corporation ("Bell Transit"), MCET Affordable

21  Transportation ("MCET"), and Functional Floors ("Functional Floors").  Dkt. 1.  The claims

22  against MCET and Functional Floors are largely irrelevant to this motion.  This action

23  remained under seal until Magistrate Judge Hixson ordered it unsealed on March 13,

24  2020.  Dkt. 33.  On June 21, 2019, while this action was under seal, relator filed his

25  operative first amended complaint ("FAC").  Dkt. 24

26          In his FAC, relator primarily alleges a five-year scheme by HUSD, the Individual

27  Defendants, Bell Transit, and MCET to defraud California and the United States out of

28  millions of dollars paid to HUSD for providing transportation services to disabled

students.  Relator asserts that the Individual Defendants collaborated with the private entities to inflate the number of students who received personal transportation by the private entities to and from school.  In his FAC, relator alleges claims for the following:

- Presentation of false claims in violation of Title 31 U.S.C. § 3729(a)(1)(A) against all defendants.  FAC ¶¶ 115-19.

- Making false records or statements in violation of Title 31 U.S.C. § 3729(a)(1)(B) against all defendants.  Id. ¶¶ 120-24.

- Presentation of false claims in violation of California Government Code § 12651(a()1) against all defendants.  Id. ¶¶ 125-29.

- Making false records or statements in violation of California Government Code § 12651(a)(2) against all defendants.  Id. ¶¶ 130-34.

- Retaliation in violation of Title 31 U.S.C. § 3730(h) and California Labor Code § 1102.5 against HUSD and the Individual Defendants.  Id. ¶¶ 135-36.

To support his first and third claims, relator asserts that defendants "made claims for payments or caused claims for payments to be made knowing that they had overpaid for such services and goods."  Id. ¶¶ 117, 127.  To support his second and fourth claims, relator asserts that the defendants used "false certifications" to have fraudulent claims paid or approved by California and the United States.  Id. ¶ 121, 131.

On June 19, 2020, after the action had been reassigned to this court, the parties filed a stipulated order for partial dismissal.  Dkt. 53.  With one modification, the court entered that order, which dismissed all claims against the Individual Defendants and left only the retaliation claim against HUSD.  Dkt. 54.  That stipulation did not affect the claims against Bell Transit, which, on June 1, 2020, had filed its pending motion to dismiss.  Dkt. 44.  On June 30, 2020, HUSD filed its motion to dismiss the remaining retaliation claim. Dkt. 61.  On July 15, 2020, rather than respond to the merits of Bell Transit's motion to dismiss,[1] relator filed the instant motion for leave to file his second

---

[1] Relator filed an opposition to HUSD's motion to dismiss on July 26, 2020.  Dkt. 71.

United States District Court
Northern District of California

1    amended complaint ("SAC").  Dkt. 67.  In his five-paragraph opening brief, relator states

2    that "the proposed Second Amended Complaint addresses and cures all of the alleged

3    pleading defects Bell claims to exist in the relator's First Amended Complaint."  Id. at 2.

4        The SAC (refiled at Dkt. 69-1) differs from the FAC in at least four main ways.

5    First, the SAC supplements the factual allegations concerning Bell Transit's and MCET's

6    participation in the manipulation of HUSD's contract approval processes.  SAC ¶¶ 57-72.

7    Second, the SAC provides additional detail about a purported conflict of interest between

8    one of the Individual Defendants, Miriam Delgadillo ("Delgadillo"), and Bell Transit and

9    MCET because of her son's employment at each of those entities.  Id. ¶¶ 73-82.  Third,

10    the SAC adds claims for reverse false claims against all defendants (except HUSD), id.

11    ¶¶ 107-111, premised upon the theory that "MCET and Bell knew that they had an

12    obligation to repay all funds due under the void contracts" but "concealed and failed to

13    disclose the obligation to California and the United States," id. ¶ 64.  Lastly, the SAC

14    reinstates the FAC's previously dismissed claims against the Individual Defendants (but

15    not HUSD).  Id. ¶¶ 96-111.  The court will detail other allegations as necessary below.

16                        **DISCUSSION**

17    **A.**     **Legal Standard**

18        Under Federal Rule of Civil Procedure 15, a party may amend its pleading as a

19    matter of course within 21 days.  Fed. R. Civ. Pro. 15(a)(1).  After that, amendment

20    requires either the opposing party's written consent or the court's leave.  Fed. R. Civ. Pro.

21    15(a)(2).  Courts should "freely give leave when justice so requires."  Id.  In deciding

22    whether to grant a motion for leave to amend, the court considers bad faith, undue delay,

23    prejudice to the opposing party, repeated failure to cure deficiencies by previous

24    amendment, futility of amendment, and whether the moving party has previously

25    amended the pleading.  In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d

26    716, 738 (9th Cir. 2013); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051

27    (9th Cir. 2003).  Of these factors, the consideration of prejudice to the opposing party

28    carries the greatest weight.  Eminence Capital, 316 F.3d at 1052.  "The party opposing

amendment bears the burden of showing prejudice." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir.1987).

"[D]elay alone is not sufficient to justify the denial of a motion requesting leave to amend." DCD Programs, 833 F.2d at 187.  However, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986). Ultimately, the decision to grant or deny a request for leave to amend rests in the discretion of the trial court.  "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989).

**B.    Analysis**

    **1.    The Court Will Allow Relator to File His SAC**

        **a.    Defendants Would Not Suffer Prejudice as a Result of the SAC**

Defendants proffer four arguments to show that the SAC's amendments would cause them prejudice.

***First***, the Individual Defendants argue that the doctrine of res judicata bars the SAC's claims against them.  Id. 8-9.  The court disagrees.  The "final judgment" relied upon by the Individual Defendants in support of this argument is the stipulated order of partial dismissal entered on June 23, 2020.  Dkt. 54.  Given that the parties filed this stipulated dismissal with a proposed order, Dkt. 53, Rule 41(a)(2) applies.  In relevant part, that rule provides that "[u]nless the order states otherwise, a dismissal under this paragraph (2) is without prejudice."  Fed. R. Civ. Pro. 41(a)(2).  The stipulated dismissal did not specify its prejudicial effect.  Incidentally, relator dismissed the subject claims without prejudice and, thus, the stipulated order of dismissal does not qualify as a final judgment.  Accordingly, the Individual Defendants' res judicata argument fails.

***Second***, the Individual Defendants state that they were previously dismissed from this action and, if allowed, the amendments would bring them back into this action.  Dkt.

73 at 8.  They assert that such reinsertion would be unfair because "they previously negotiated a dismissal."  Id.  As explained above, the parties filed a stipulated dismissal that had a non-prejudicial effect.  Given that, the Individual Defendants have no legal basis to claim that their reinsertion in this action is undue.  If they wanted to prevent such possibility, their stipulated dismissal should have specified its prejudicial effect.[2]

Third, HUSD and the Individual Defendants argue that relator fails to proffer any explanation or authority justifying the Individual Defendants' reinsertion in this action.  Id. at 10.  They assert that such reinsertion "is especially prejudicial as [r]elator has been informed of the underlying facts and theories since the commencement of this action in 2016."  Id. at 10.  Relator addresses this point in his reply, arguing that he dismissed the Individual Defendants out of a good faith belief that they were immune under the Eleventh Amendment and that a purported intervening authority in U.S. ex. rel. Citynet, LLC v. Gianeto et. al., 962 F.3d 154 (4th Cir. June 22, 2020) "changed the law" on qualified immunity, thus justifying reinserting the Individual Defendants.  Dkt. 78 at 6.

The court is skeptical that Citynet played such a pivotal role in relator's decision to reinsert the Individual Defendants.  First, that authority is not binding.  More importantly, it appears to primarily concern the scope of qualified immunity available to agents of a state actor who are sued for false claims violations.  Citynet, LLC, 962 F.3d at 159 ("When applicable, the doctrine of 'qualified immunity shields federal and state officials from money damages' in cases alleging violations of either "statutory or constitutional rights.' . . . But we have yet to address the more specific question of whether qualified immunity may be invoked as a defense to claims brought under the FCA . . .").  HUSD and the Individual Defendants, however, disclaimed any intent to pursue such a defense.

---

[2] The court acknowledges that relator previously "dismissed a pending Alameda County Superior Court civil action against HUSD and individual employees of HUSD for unlawful retaliation."  Dkt. 78 at 4.  While the dismissal of that action might potentially serve as a basis for finding that the stipulated dismissal here carried prejudicial effect, Fed. R. Civ. Pro 41(a)(1)(B) ("But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits"), neither HUSD nor the Individual Defendants argued such a basis.

1    Dkt. 73 at 11 ("The District and Individual Defendants have never made a qualified

2    immunity argument and do not intend to do so.").

3          Despite the above, the court finds that neither the Individual Defendants nor HUSD

4    would suffer prejudice.  Significantly, less than a month passed between the order of

5    stipulated dismissal and the instant motion, no major litigation events in this action have

6    occurred or deadlines have passed since the dismissal, and defendants failed to identify

7    any specific harm to their litigation position suffered as a result of their brief dismissal.

8          **Fourth**, Bell Transit argues that it will suffer prejudice from the SAC because the

9    allegations of fraud damage its public reputation and it has expended resources

10   defending against the FAC.  Dkt. 74 at 20.  The first part of this argument lacks force

11   because the FAC itself alleges that Bell Transit engaged in fraud.  FAC ¶ 1.  While the

12   court is sensitive to litigation costs, such costs do not show prejudice to Bell Transit's

13   litigation position.  Given the above, the court concludes that the prejudice factor cuts in

14   favor of granting relator's motion to file the SAC.

15                    **b.    The SAC's Amendments Are Not Futile**

16         Defendants advance four arguments to show that the SAC's amendments, even if

17   allowed, would fail to support a claim against them.

18         **First**, Bell Transit argues that the pleading deficiencies identified in its motion to

19   dismiss the FAC remain present in the SAC and, thus, the court should deny relator leave

20   to file the SAC as its amendment are futile.  Dkt. 74 at 10-18.  Stated simply, Bell Transit

21   contends that relator failed to proffer sufficient facts to support a plausible claim against it

22   and, even if relator had, he nonetheless failed to allege the fraud underlying such claim

23   with the requisite Rule 9(b) specificity.  Id.

24         At this juncture, the court cannot conclude that the SAC's amendments would fail

25   to save relator's claims.  Significantly, relator alleges that Bell Transit and some of the

26   Individual Defendants collaborated to cause HUSD to purchase unnecessary services

27   from Bell Transit.  SAC ¶¶ 1, 57-64, 82.  This scheme began in 2015, id. ¶ 78, and

28   continued through at least October 2016, id.  ¶ 65.  As part of the scheme, these

United States District Court
Northern District of California

United States District Court
Northern District of California

1 | defendants "falsely characterized" the nature of HUSD's transportation purchases "to

2 | avoid" ordinary approval processes and to allow them "to illegally structure the contracts

3 | to avoid public bidding requirements."  Id. ¶ 59.  Bell Transit "knew" that the purchases

4 | were "large enough" to undergo the ordinary approval process and "require" competitive

5 | bidding, id. ¶ 62, but, despite such knowledge, still accepted approximately $2,008,300

6 | for the challenged services, id. ¶ 61.  These allegations prevent the court from concluding

7 | that the SAC's amendments in support of the claims against Bell Transit are futile.

8 |      To be sure, the court sees many potential pleading deficiencies in the SAC,

9 | including, for example, relator's use of the passive voice (e.g., id. ¶ 60), reliance upon

10 | illogical dangling participles to describe who performed the alleged conduct (e.g., id. ¶

11 | 58), and thin specification of the circumstances concerning the alleged frauds.  The court

12 | also understands Bell Transit's less-than-subtle suggestion that Rule 1 requires it to

13 | administer procedure in a "just, speedy, and inexpensive" way and, thus, the court should

14 | decide the viability of relator's SAC in this order.  Dkt. 74 at 10.  To the extent Bell Transit

15 | invites the court to conduct a Rule 12(b)(6) analysis in its determination of the futility

16 | factor in this order, the court declines.  Typically, when deciding a motion for leave to file

17 | an amended pleading, the court will find an amendment futile only if that finding rests

18 | upon a pure issue of law, such as, for example, a statute of limitations question.

19 |      But Bell Transit failed to identify any such issues.  Instead, its futility arguments

20 | focus on the sufficiency of the facts alleged.  The only challenge that could potentially fall

21 | in that category concerns the viability of relator's theory of a false claim.  Id. at 11 ("To the

22 | extent Fallon is attempting to allege that a contract that HUSD could have voided . . .

23 | resulted in false claims and obligations to refund moneys paid, Fallon is pursuing an

24 | invalid theory . . . "). Ultimately, the court might agree with Bell Transit that, as a matter of

25 | law, the mere voidability of a contract between a private entity and a government entity

26 | that the private entity is then paid under does not give rise to an actionable false claim.

27 | However, its position rests upon non-binding authority.  Relator should have the

28 | opportunity to address this authority, and identify and proffer his own, in a properly

1    briefed Rule 12(b)(6) motion.  Absent that opportunity, the court will not conclude that

2    relator's apparent theory of a fraudulent contract is non-actionable.

3          ***Second***, HUSD and the Individual Defendants similarly argue that the key

4    deficiency in the FAC, namely its failure to allege fraud with Rule 9(b) specificity, remains

5    in the proffered SAC.  In support, they cite a handful of the SAC's allegations concerning

6    the alleged contract-splitting and bid-rigging schemes and note that they "do not include

7    any particularized supporting detail to allege that the Individual Defendants submitted

8    false claims."  Dkt. 73 at 12.  Again, at this juncture, the court cannot conclude that the

9    amendments are futile.  A Rule 12(b)(6) motion, where relator has an opportunity to fully

10   address these purported deficiencies, is the proper procedural vehicles to analyze them.

11         ***Third***, HUSD and the Individual Defendants assert that relator's justification for

12   reinserting them—namely, the recent decision in <u>Citynet, LLC</u>—is irrelevant to the instant

13   action.  Dkt. 73 at 11.  As noted above, the court tends to agree.  That said, any limit on

14   <u>Citynet</u>'s applicability says nothing about the futility of the amendments at issue.

15         ***Fourth***, the Individual Defendants argue that the California Government Code

16   claims against them are futile because they qualify as public entities not subject to suit

17   under its provisions.  Dkt. 73 at 13.  They reason that, regardless of whether relator

18   technically alleged this claim against them in their individual capacities, that code

19   requires their associated government entity (i.e., HUSD) to "defend and indemnify [them]

20   against claims arising out of acts or omissions occurring within the scope of [their]

21   employment."  <u>Id.</u>  Given that, they argue, "a lawsuit against defendant employees is

22   tantamount to a suit against the school district itself."  <u>Id.</u>

23         Again, at this juncture, the court cannot conclude that the California Government

24   Code claims against the Individual Defendants are non-actionable.  In the SAC, relator

25   does not allege that the Individual Defendants were acting within the scope of their

26   employment when engaging in the alleged misconduct.  To the contrary, the SAC alleges

27   that they were engaged in bid-rigging, issuing kickbacks, and misappropriating public

28   funds.  Such alleged conduct is unlawful and, thus, might ultimately be found to have

United States District Court
Northern District of California

been outside the scope of employment.  Accordingly, this argument does not provide a basis to find that the state law claims against the Individual Defendants are futile.  Given the above, the court concludes that the futility factor cuts in favor of granting relator's motion.

c.    **The Remaining Factors Do Not Cut Against Granting Leave**

Defendants advance two sets of arguments to show that the remaining factors support denying relator's motion.  The court briefly notes each below.

HUSD and the Individual Defendants argue that relator and his counsel have caused undue delay and engaged in bad faith litigation tactics by omitting the added allegations and claims from the FAC.  Dkt. 73 at 14.  They assert that, because of relator's unexplained failure to advance all relevant facts and theories in that filing, they will incur expenses to file another motion to dismiss.  Id.  As indicia of relator's bad faith, the Individual Defendants call out relator's failure to proffer any explanation for his late amendments or decision to reinsert them into this action.  Id. 14-15.

Bell Transit goes further.  It explains that given his "alleged insider knowledge," relator surely knew "all of the facts and theories that support his case at the time of filing." Dkt. 74 at 19.  Bell Transit adds that his failure to include all such facts at the time of his initial complaint in December 2016 is troubling "since all of the events giving rise to Bell Transit's alleged liability occurred before 2017."  Id.  Bell Transit also asserts that, because of relator's omission, the governments were effectively prevented from evaluating all facts when they decided against intervening, which, in turn, raises serious questions about the timing and validity of the amendments.  Id. at 20 n.7.

The court concludes that the timing and circumstances surrounding the SAC's proffered amendments do not support finding undue delay or bad faith by relator.  As an initial matter, the court agrees that relator failed to explain why he omitted his now-proffered factual allegations.  However, such a failure is insufficient to bar him from amending his operative pleading under Rule 15, particularly when he has not previously amended the claims at issue.  Relatedly, at the time of the instant motion, this action had

1  been unsealed for less than five months.  Since then, the court has not set any deadlines

2  that would unfairly affect defendants' ability to litigate this case.  Lastly, the terms of the

3  stipulated dismissal stated that the United States and California did not object to the

4  dismissal of claims brought on their behalf "provided dismissal is without prejudice to the

5  rights of the United States [and the State of California]."  Dkt. 54 ¶¶ 3, 4 (emphasis in the

6  original).  Given that, it appears that the governments could revisit their decisions not to

7  intervene if they decide the new allegations merit intervention.  Accordingly, the court

8  finds that the remaining factors do not cut against granting relator's motion.

9      **2.**    **The Court Denies HUSDs' Alternative Request for Costs**

10      In the alternative, HUSD asks the court to impose costs upon relator to

11  compensate it for opposing his FAC.  Dkt. 73 at 15-16. In his reply, relator argues that

12  this request is unsupportable under Rule 15.  Dkt. 78 at 12.

13      Relator is wrong.  Gen. Signal Corp. v. MCI Telecommunications Corp., 66 F.3d

14  1500, 1514 (9th Cir. 1995) ("[W]e have held that a district court, in its discretion, may

15  impose costs pursuant to Rule 15 as a condition of granting leave to amend in order to

16  compensate the opposing party for additional costs incurred because the original

17  pleading was faulty.").  Regardless, this time, the court denies HUSD's request.  While

18  substituting an opposition to a pending Rule 12 motion with a motion for leave to file an

19  amended pleading is a questionable strategy, HUSD failed to cite any authority expressly

20  forbidding it.  In any event, although it was limited in scope, relator did file an opposition

21  to HUSD's second motion to dismiss.  Dkt. 71.  Accordingly, each party shall bear its own

22  costs.

23                                **CONCLUSION**

24      For the above reasons, the court **GRANTS** relator's motion for leave to file his

25  SAC.  Dkt. 67.  The court **ORDERS** relator to immediately file the SAC as a standalone

26  document on the docket.  Given that the SAC is now the operative pleading in this action,

27  the court **TERMINATES** as moot defendants' pending motions to dismiss the FAC (Dkt.

28  44 and Dkt. 61).  Any future Rule 12 challenge by defendants must be directed at the

United States District Court
Northern District of California

SAC.

      **IT IS SO ORDERED.**

Dated: August 24, 2020

                             /s/ Phyllis J. Hamilton
                             PHYLLIS J. HAMILTON
                             United States District Judge

United States District Court
Northern District of California