Stephen R. Jaffe CSBN 49539
Sephen.r.jaffe@jaffetriallaw.com
THE JAFFE LAW FIRM
1 Sansome Street
Suite 3500
San Francisco, CA 94104
415-618-0100

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. STEVEN FALLON and on behalf of the STATE OF CALIFORNIA, | : : : | CASE NO. 16-civ-6994-PJH-TSH |
| | : | |
| Plaintiff-Relator, | : : : | SECOND AMENDED COMPLAINT UNDER THE UNITED STATES FALSE CLAIMS ACT [31 U.S.C. § 3729 *et seq*] |
| v. | : : | JURY TRIAL DEMANDED |
| | : | |
| BELL TRANSIT CORPORATION; MCET AFFORDABLE TRANSPORTATION; FUNCTIONAL FLOORS; MATTHEW WAYNE, MIRIAM DELGADILLO; LUCI ROGERS; TAMMY WATSON, HAYWARD UNIFIED SCHOOL DISTRICT, | : : : : : : : : | |
| Defendants. | : | |

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**I.**

THE UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA, EACH BY AND THROUGH

STEVEN FALLON ("FALLON" OR "RELATOR"), COMPLAIN OF THE ABOVE-NAMED

DEFENDANTS AND EACH OF THEM AS FOLLOWS:

**Nature of the Case**

1.   This is a case of public corruption and the award of inflated contracts without necessary school board

approvals or without disclosure of other facts which would have caused the rejection of such contracts and the

award of contracts where competitive bidding was required, but dispensed with by the defendants. The

corporate defendants herein submitted bids and invoices on contracts that they knew were improperly awarded under state law and in violation of federal grant restrictions by reason of the above, including prohibited conflicts of interest or kickback arrangements, and which they knew were inflated by reason of the conflicts or kickbacks. Had the school board been aware of these facts, these contracts would not have been approved, and payment of the invoices not made.

2.   The relator, Steven Fallon, seeks to recover on behalf of each of the governments treble damages and civil penalties arising from false claims, and the creation of false records and statements made or caused to be made and submitted directly or indirectly by the defendants, to the United States Government and the State of California, for a conspiracy to obtain payment of same, and for reverse false claims all in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq*.,  and the California False Claims Act, Cal. Gov't Code § 12650 *et seq*. ("CA FCA").

### Jurisdiction and Venue

3.   This action arises under the FCA and CA FCA to recover statutory treble damages and civil penalties on behalf of the United States of America and California arising out of Defendants' violations of the FCA and the CA FCA.

4.    Under §3732 of the FCA, this Court has jurisdiction over actions brought under the FCA. Furthermore, jurisdiction over this action is conferred on this Court by 28 U.S.C. § 1331 because this civil action arises under the laws of the United States.

5.   This Court has personal jurisdiction over the Defendants and venue is proper in this District. Pursuant to § 3732(a) of the FCA: "any action under §3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant, can be found, resides, transacts business, or in which any act proscribed by §3729 occurred." Defendants reside in this District. Moreover, at all times material hereto, Defendants have regularly conducted substantial business within this District. In addition, proscribed acts by Defendants, among those that are the subject of this action, occurred in this District. Venue is

additionally proper in this district pursuant to 28 U.S.C. § 1391(b)(1)-(2).

6.    This Court has supplemental jurisdiction over the claims brought pursuant to the CA FCA pursuant to 28 U.S.C. § 1367 which provides that: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they for part of the same cases or controversy under Article III of the United States Constitution."

## PARTIES

7.    Relator is a citizen and a resident of Riverside County, California. Relator brings this action on behalf of the United States and the State of California.

8.    From 2014 to June, 2017, Relator was employed by the Hayward Unified School District ("HUSD") as its Director of Maintenance, Operations, Transportation and Security. As Director, he was responsible for all maintenance, janitorial, school busing/transportation and security for HUSD. Relator reported to the Chief Business Officer. Five senior managers reported to Relator.

9.    Prior to working for HUSD, Relator was a regional vice president of Durham School Services ("Durham"), a large national school busing company. While at Durham, Relator gained knowledge of the regulations and requirements for busing school children.

10. Durham has provided school busing services to HUSD since at least 1990. 16. Relator has also been employed as a top-level manager at several other companies.

11.   Relator brings this action based on direct and independent knowledge.

12. None of the actionable allegations set forth in this Second Amended First Amended Complaint are based upon a public disclosure as set forth in 31 U.S.C. §3730(e)(4). Notwithstanding the same, Relator is an original source of the facts alleged in this Second Amended First Amended Complaint due to the first-hand knowledge he gained while working at HUSD. Prior to filing this Complaint, Relator voluntarily provided information regarding Defendants' transportation services and kickbacks and other fraud to the United States.

13. Defendant Bell Transit Corporation ("Bell") is a California corporation. Its principal place of business is presently in San Leandro, California. It previously was located in Hayward,, California.

14. Bell provides passenger transportation systems and services.

15. Bell provided transportation services to HUSD's special education students from at least 2011 through 2016. These services were separate and apart from the transportation services provided by Durham to HUSD's special education students.

16. Defendant MCET Affordable Transportation ("MCET") is a California corporation. Its principal place of business is 14550 Wake Avenue San Leandro, California. MCET uses and operates under several aliases: MyCoyte Express Transportation, MyCoyte Express.

17. MCET provides passenger transportation services  MCET provided transportation services to HUSD's special education students from at least 2011 through 2015. These services were also separate and apart from the transportation services provided by Durham to HUSD's special education students.

18. Functional Floors is a California company located at 25 Velasco Court Danville, California. Its owner and operator is Denez Batiza.

19. Functional Floors had a long-term business relationship with HUSD to provide and install flooring materials. 26. HUSD Unified School District ("HUSD"is a school district created under the Education Code of the State of California. It is governed by an elected board of persons ("School Board").

20. Defendant Matthew Wayne ("Wayne") is a citizen of California residing in Sunnyvale, California. Defendant Wayne is sued in his individual capacity. 28. During the relevant time, Defendant Wayne was Associate Superintendent for HUSD.

21. Defendant Miriam Delgadillo ("Delgadillo") is a citizen of California residing in Hayward, California. Defendant Delgadillo is sued in her individual capacity.

22. Defendant Delgadillo is employed by HUSD as an office specialist. In that role, Defendant Delgadillo is responsible, along with Defendant Watson, for designating students for transport services.

23. Defendant Delgadillo's son was employed by MCET and later became employed by Bell.

24. Defendant Luci Rogers ("Rogers") is a citizen of California residing in Hayward, California. Defendant Rogers is sued in her individual capacity.

25. Defendant Rogers is employed by HUSD and during the relevant period has been HUSD's Chief Financial Officer.

26. Defendant Tammy Watson ("Watson") is a citizen of California. Defendant Watson is sued in her individual capacity.

27. Defendant Watson was employed by HUSD until mid-2016 as the Director of Special Education. Defendant Delgadillo reported to Defendant Watson. Defendant Watson is currently employed at the Pittsburgh Unified School District in California.

## LEGAL FRAMEWORK

***The*** *False Claims Act*

28. The FCA imposes liability upon any person who: (a)"knowingly presents or causes to be presented [to the government] a false or fraudulent claim for payment orapproval"; or (b)"knowingly makes, uses, causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A) and **(B),** as amended.

29. The FCA imposes liability not only for intentionally false or fraudulent conduct, but also where an individual "acts in deliberate ignorance of the truth or falsity of the information" or "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(ii) or (iii).

30. The FCA defines claim as (A) "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion

of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

31.    The FCA defines "material" as "having a natural tendency to influence or be capable of influencing the payment or receipt of property or money." 31 U.S.C. § 3729(b)(4).

*Legal Framework Regarding Funding for Special Education Students' Transportation*

32.    The United States, through the Department of Education (DOE), provides funds to the states and their school districts to provide transportation services to special needs students. The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1411, authorizes the Secretary of DOE to make grants to the states to assist the states in providing special education and related services to children with disabilities.

33.    A material requirement and condition of each such grant is that "No employee, officer, or agent may participate in the selection, award, or administration of a contract supported by a Federal award if he or she has a real or apparent conflict of interest." 2 C.F.R. § 200.318(c)(1).

34.    A material requirement of California's procurement law is that "that agency contracting personnel are free from conflict of interest" Cal. Pub. Cont. Code § 10333(a).

35.    Under the policies of the HUSB school board, the existence of a conflict of interest with respect its contracts would be material to its decision to approve a bid, contract, or expenditure of funds.

36.    The amount of the State grants is determined by a statutory formula which is based on an average per-pupil expenditure in public elementary and secondary schools multiplied by the number of children in the state with disabilities.

37.    Under IDEA, transportation is a related service as defined in 34 C.F.R.§ 300.34 (c) (16). Transportation includes travel to and from school, travel between schools and travel in and around school buildings.

38.    Under IDEA and its implementing regulations, a child's individualized education program ("IEP") Team is responsible for determining if transportation is required to assist a child with a disability to

benefit from special education and related services and how the transportation should be implemented. 34 C.F.R. § 300.107 and § 300.117.

39.     Under California law, local education agencies ("LEAs") are mandated to provide transportation to special education students who require it under their IEPs.

40.     Funding for special education is provided by the California Department of Education ("CDE") in the form of block grants.

41.     Even following the enactment of California's Local Control Funding Format ("LCFF"), state categorical grants for special education and student transportation still are provided.

42.     In addition, CDE provides funds to the Special Education Local Plan Areas ("SELPAs"). Each SELPA develops a local plan for allocating those funds.

## HUSD'S SPECIAL EDUCATION STUDENTS' TRANSPORTATION AND FUNDING

43.     In addition to funds received from California, HUSD receives funds from the United States via DOE to educate its special education students, including funds to be used for transportation.

44.     According to HUSD's Financial Statements for the fiscal year ending June 30, 2013, HUSD received from DOE, among other funds, $3,337,511 in accordance with the statutory mandate in IDEA. These funds were identified as DOE Federal Catalog No. 84-027, pass through Identifying No. 13279.

45.     According to HUSD's Financial Statements, for the fiscal year ending June 30, 2015, HUSD received from DOE, among other funds, $3,073,838 in accordance with the statutory mandate in IDEA. These funds were identified as DOE Federal Catalog No. 84- 027, pass through Identifying No. 13279.

46.      HUSD received $1,086,759 from California for student transportation services in fiscal year 2015/16.

47.     Since the implementation of LCFF, California no longer separates general education and special education transportation revenue. However, for HUSD in 2015/16, $276,584 was identified for the transportation of severely disabled and orthopedically impaired students and $810,175 was identified for the

transportation of general education students.

*False and Fraudulent Use of Taxis to Transport Special Needs Students*

48.     Both the need for and the means of transportation for special education students is dictated by the individual student's Individualized Educational Program ("IEP").

49.     Very few of the HUSD special education students who had IEPs requiring transportation, had IEPs that required transportation by taxi or other specialized vehicle.

50.     Based on relator's experience in the school transportation industry, usually only a small percentage of students, about 15 out of 100,000, require such transportation.

51.     Transporting students individually instead of by bus, is not only vastly more expensive, but also creates a greater risk to student safety because the level of scrutiny and control of school bus drivers is greater than that available for taxi service drivers. For example,  many of the taxi drivers who were  transporting HUSD special need students was not certified for fitness and were the subject of multiple student complaints ranging from sexual assault to drunk driving.

52.     After commencing his employment at HUSD, Relator recognized that a disproportionate number of HUSD special education students were being transported by taxi. During 2015-2016 school year, some 42% of HUSD's transportation budget was paid to private taxi services to transport special education students.

53.     Following Relator's complaint about the problem in mid-2016, it was found that, based on their IED's, over 90% of the students receiving individual transport did not require it. That is, the number being individually transported to school daily the following school year, fell from 149 to only 13 students at HUSD.

54.     However, for the years 2011 through June 2016, the number of students transported individually had never been below 135.

55.     Inasmuch as transport by taxi puts students who do not need it at unnecessary risk, is vastly more expensive than transport by bus, and increases rather than decreases the administrative burden on the persons authorizing and overseeing the transport of students with special needs, the only possible motive for improperly

ordering taxi service is monetary.

56.     The direct beneficiaries of the unnecessary and improper expenditures are the taxi services, whose revenue for transport was increased more than tenfold by the improper practice and were paid millions of dollars in government funds for unneeded services.

*Use of Fraudulent and Illegal Contracts and Bid-Splitting*

57.     The special education taxi contracts were handled exclusively by Defendants Watson and Delgadillo. Delgadillo was the HUSD employee responsible for designating HUSD special education students as eligible for taxi service

58.     With the participation of defendants Bell and MCET, the contracts were falsely and fraudulently designated and structured so as to (a) avoid pre-approval of the companies; (b) avoid Board approval;  (c) avoid the need for competitive bidding under California law, and (d) misrepresent extent and amount of services to provided, from 2011 through 2017.

59.     Prior to 2017, to avoid formal scrutiny, MCET, Bell, Delgadillo and Watson, falsely characterized the transportation contracts as independent contractors to avoid the approval process for vendors and allow them to illegally structure the contracts to avoid public bidding requirements.

60.     The contracts were also fraudulently structured into smaller purchase orders so as to avoid competitive bidding requirements in violation of Public Contract Code § 20111 and §20116. The latter provides: "It shall be unlawful to split or separate into smaller work orders or projects any work, project, service, or purchase for the purpose of evading the provisions of this article requiring contracting after competitive bidding."

61.     For example, for the 2015/2016 school year, Degadillo and Watson with the knowledge and participation of Bell, fraudulently split Bell's contract into smaller orders. The initial contract was priced at $41,700 to avoid the $45,000 threshold requiring Board approval and competitive bidding requirements for the contract, and then incrementally increased 16 or more times during the school year to the final amount of

$2,008,300. Defendant Rogers approved the increments.

62.     MCET and Bell knew that their work orders were large enough to require Board approval and require competitive bidding and knew that the "contracts" awarded to them were unauthorized, ultra vires and void.

63.     Each invoice submitted by MCET and Bell was therefore false fraudulent because no payment was due from HUSD, and the invoices omitted the material information of the invalidity of the contracts.

64.     MCET and Bell knew that they had an obligation to repay all funds due under the void contracts but have concealed and failed to disclose the obligation to California and the United States.

65.     The false and fraudulent making of HUSD transportation contracts continued. On October 26, 2016, an attempt was made to have the HUSD Board approve a contract with Bell for the year July 1, 2016 through June 30, 2017 ("Bell 2016/17 Proposed Contract").

66.     The Bell 2016/17 Proposed Contract was for a total cost of $679,875 and was prepared with the participation and approval of Bell. Defendant Wayne submitted the Bell 2016/17 Proposed Contract to the HUSD Board for its approval.

67.     The factual data presented to the Board to support the Bell 2016/17 Proposed Contract misrepresented and substantially overstated the number of students served by Bell in 2015/16, as well as overstating the number of students to be served by Bell in 2016/17.

68.     In addition to having key factual detail misrepresented, the Bell 2016/17 Proposed Contract had not been submitted nor reviewed by the HUSD purchasing Department, and more importantly, and, as with the other fraudulent transportation contracts, had not been put out to public bid in violation of the HUSD contracting rules and policies and California Public Contract Code § 20111.

69.     Relator became aware of the HUSD Board's impending vote. Relator immediately notified Defendant Wayne of the failure to have the Bell 2016/17 Proposed Contract submitted for bid. Relator also advised Defendant Wayne of the factual inaccuracies in the data that was to be presented to the Board.

70.     Defendant Wayne refused to remove the Bell 2016/17 Proposed Contract from the Board's agenda and vote.

71.     To prevent a further fraud from being committed, Relator was able to cause the contract to be removed from the Board's agenda.

72.     Following the meeting, Defendant Wayne acknowledged that the Bell 2016/17 Proposed Contract was required to be submitted for public bid, even though he had submitted it to the Board for its approval without any bids being solicited.

*Concealment of Conflict of Interest*

73.     Prior 2015, MCET employed Emmanuel Delgadillo ("Emmanuel"). MCET knew that Emmanuel was the son of Miriam Delgadillo ("Delgadillo") and that she could control the award and amount of taxi service contracted for by HUSD for special education students. This knowledge was a substantial factor in the hiring or retention of Emmanuel by MCET.

74.     MCET knew that the existence of a conflict of interest would be material to the decision of the Board to award it a contract and pay its invoices and that it was material to the State of California and the United States to expend the funds used to pay MCET.

75.     Notwithstanding this knowledge, MCET failed to disclose the conflict of interest in its contracts, invoices and other papers and records furnished to HUSD in connection with its requests for payment.

76.     The failure to disclose the conflict of interest was a material omission from each contract, purchase order and invoice presented by MCET to HUSD for payment.

77.     By and through Emmanuel and other agents and employees, MCET knew that Delgadillo was inflating its business with HUSD by authorizing and ordering taxis for special needs students whose IED did not call for individualized transportation.

78.     Beginning 2015, Bell employed Emmanuel. Bell knew that Emmanuel was the son of Miriam Delgadillo ("Delgadillo") and that she could control the award and amount of taxi service contracted for by

HUSD for special education students. This knowledge was a substantial factor in the hiring and retention of Emmanuel by Bell.

79.     Bell knew that the existence of a conflict of interest would be material to the decision of the Board to award it a contract and pay its invoices and that it was material to the State of California and the United States to expend the funds used to pay Bell.

80.     Notwithstanding this knowledge, Bell failed to disclose the conflict of interest in its contracts, invoices and other papers and records furnished to HUSD in connection with its requests for payment.

81.     The failure to disclose the conflict of interest was a material omission from each contract, purchase order and invoice presented by MCET to HUSD for payment.

82.     By and through Emmanuel and other agents and employees, Bell knew that Delgadillo was inflating its business with HUSD by authorizing and ordering taxis for special needs students whose IED did not call for individualized transportation.

**The Flooring Kickback Scheme**

83.     For several years prior to Relator's employment at HUSD, defendant Functional Flooring submitted false and fraudulent invoices in connection with fraudulently inflated contracts with HUSD.

84.     Denez Batiza, the owner of Functional Flooring stated to Relator that he had an established kickback arrangement with Relator's predecessor Billy Martin. Batiza offered Relator "the same kickback arrangement" he had with Mr. Martin. Relator declined.

85.     In the years prior to Relator's employment, annual costs for replacement flooring averaged between $350,000 and $500,000 per year.

86.     In the years of Relator's employment, and absent the kickback scheme, the cost of annual flooring work was reduced to approximately $50,000 per year.

**EMPLOYMENT RETALIATION AGAINST RELATOR BY HUSD**

87.     Pursuant to 31 USC §3730(h) of the FCA, the False Claims Act provides protection for persons

who are "discharged, demoted, suspended, threatened, harassed or in any other manner discriminated against in the terms and conditions of employment" on account of such persons reporting what they reasonably believe to be unlawful conduct of their employer in violation of the False Claims Act.

88.     In the course of the performance of his duties and responsibilities for HUSD and based on his past employment experience, the Relator discovered HUSD was transporting a suspiciously high and disproportionate number of special needs students by taxi.

89.     Upon making this discovery, the Relator investigated the facts and determined that the assignments of the great majority of special needs students to use private taxi services were unnecessary and/or based on false information, thus costing HUSD approximately two million dollars ($2,000,000) per year.

90.      The Relator further determined that many of the taxi drivers who were transporting HUSD special need students was not certified for fitness and were the subject of multiple student complaints ranging from sexual assault to drunk driving.

91.     The Relator also discovered that defendants MATTHEW WAYNE, MIRIAM DELGADILLO; LUCI ROGERS; TAMMY WATSON were engaging in unlawful bid rigging, kickbacks, and the misappropriation of funds specially designated for the purpose of transporting disabled and special needs students.

92.     The Relator reported the foregoing corruption, fraud and illegal conduct to HUSD's Superintendent of Schools and members of the HUSD School Board. To Relator's knowledge, no remedial or other action was taken.

93.     Beginning in April of 2016, in retaliation for him having investigated and exposed the foregoing corruption, kickbacks, fraud and illegal conduct he had discovered and reported, HUSD and its employees started an incessant and continuous campaign of severe harassment (including multiple threats of termination of employment) of the Relator. Prior to June 2, 2017, claiming "a budget shortfall," HUSD "reorganized" Relator's department, essentially eliminating Relator's job and the jobs of other HUSD employees who reported to the

Relator. In fact, the claimed reorganization was a pretext and was wholly motivated by HUSD's purpose to retaliate, harass and discriminate against Steven Fallon. HUSD announced Relator's resignation from employment. However, the Relator had not resigned when that false announcement was made., further damaging the Relator. Unable to continue his employment in the unlawful retaliatory and discriminatory environment against him created by HUSD and its employees, the Relator was forced to resign his employment on June 2, 2017.

94.     As the direct and proximate result of the foregoing conduct of HUSD and defendants MATTHEW WAYNE, MIRIAM DELGADILLO; LUCI ROGERS; TAMMY WATSON, the Relator has suffered the following damages: (a) Loss of past and future earnings; (b) Severe emotional distress, past and future; (c) Medical and therapy expenses, past and future.

95.     On October 20, 2016, the Relator filed a California Government claim against HUSD seeking compensation for his injuries and damages. On December 5, 2016, HUSD rejected that claim.

**Claims for Relief**

**I**
**FEDERAL FALSE CLAIMS ACT – PRESENTATION OF FALSE CLAIMS**
**(31 U.S.C. § 3729(a)(1)(A)**

96.     By virtue of the acts and omissions described above, defendants, and each of them knowingly presented, or caused to be presented, to an officer or employee of the United States Government false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

97.     The acts and omissions described above were material to contract approvals, grant approvals, audit and monitoring approval, payments and other contract actions by the United States.

98.     The acts and omissions described above caused damages to the United States, in substantial amounts to be determined at trial.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

**To the United States:**

(1) Three times the amount of actual damages which the United States has sustained as a result of Defendants' conduct;

(2) A civil penalty for each false claim which Defendants presented or caused to be presented to the United States;

(3) Pre- and post-judgment interest; and

 (4) All costs incurred in bringing this action.

**To the Relator:**

(1) The maximum amount allowed pursuant to § 3730(d) of the False Claims Act and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3) An award of reasonable attorney's fees, costs and expenses; and

(4) Such further relief as this Court deems equitable and just.

## II
### FEDERAL FALSE CLAIMS ACT - FALSE RECORDS AND STATEMENTS
### (31 U.S.C. § 3729(a)(1)(B)

99.     By virtue of the acts and omissions described above, defendants, and each of them,  knowingly made use of, or caused to be made use of, false records or statements to get false or fraudulent claims paid or approved by the Government, in violation of 31 U.S.C. § 3729(a)(1)(B).

100.     The acts and omissions described above were material to contract approvals, grant approvals, audit and monitoring approval and payments by the United States.

101.     The acts and omissions described above caused damages to the United States, in substantial amounts to be determined at trial.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

**To the United States:**

(1) Three times the amount of actual damages which the United States has sustained as a result of Defendants' conduct;

(2) A civil penalty for each false record or statement Defendants made to get false or fraudulent claims paid or approved by the Government;

(3) Pre- and post judgment interest; and

(4) All costs incurred in bringing this action.

**To the Relator:**

(1) The maximum amount allowed pursuant to § 3730(d) of the False Claims Act and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3) An award of reasonable attorney's fees and costs; and

(4) Such further relief as this Court deems equitable and just.

### III
### FEDERAL FALSE CLAIMS ACT – REVERSE FALSE CLAIMS
### (31 U.S.C. § 3729(a)(1)(G)

102.    By virtue of the acts and omissions described above, defendants, and each of them, knowingly made, used or caused to made or used, a false record or statement material to an obligation to pay or transmit money to the Government, or knowingly concealed, or knowingly and improperly avoided an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. §3729(a)(1)(G).

103.    The acts and omissions described above caused damages to the United States, in substantial amounts to be determined at trial.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

**To the United States:**

> (1) Three times the amount of actual damages which the United States has sustained as a result
>
> of Defendants' conduct;
>
> (2) A civil penalty for each false record or statement defendants made or used material to an obligation
>
> to pay or transmit money to the Government;
>
> (3) Pre- and post judgment interest; and
>
> (4) All costs incurred in bringing this action.

**To the Relator:**

> (1) The maximum amount allowed pursuant to § 3730(d) of the False Claims Act and/or any
>
> other applicable provision of law;
>
> (2) Reimbursement for reasonable expenses which Relator incurred in connection with this
>
> action;
>
> (3) An award of reasonable attorney's fees, costs and expenses; and
>
> (4) Such further relief as this Court deems equitable and just.

**IV**
**VIOLATION OF THE CALIFORNIA FALSE CLAIMS ACT–**
**PRESENTATION OF FALSE CLAIMS**
**(Ca. Govt. Code § 12651(a)(1))**

104.     By virtue of the acts and omissions described above, defendants, and each of them knowingly presented, or caused to be presented, to an officer or employee of  California false or fraudulent claims for payment or approval, in violation of Ca. Govt. Code § 12651(a)(1).

105.     The acts and omissions described above were material to contract approvals, grant approvals, audit and monitoring approval, payments, and other contract actions by California.

106.     The acts and omissions described above caused damages to California, in substantial amounts to be determined at trial.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

**To the State of California:**

(1) Three times the amount of actual damages which California has sustained as a result of Defendants' conduct;

(2) A civil penalty for each false claim which Defendants presented or caused to be presented to California;

(3) Pre- and post judgment interest; and

(4) All costs incurred in bringing this action.

**To the Relator:**

(1) The maximum amount allowed pursuant to § 12652(g)(1)(C)(2) of the CA FCA and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3) An award of reasonable attorney's fees, costs and expenses; and

(4) Such further relief as this Court deems equitable and just.

**V**
**VIOLATION OF THE CALIFORNIA FALSE CLAIMS ACT – FALSE RECORDS AND STATEMENTS**
**(Ca. Govt. Code § 12651(a)(2))**

107.   By virtue of the acts and omissions described above, defendants, and each of them,  knowingly made use of, or caused to be made use of, false records or statements to get false or fraudulent claims paid or approved by the California, in violation of Ca. Govt. Code § 12651(a)(2).

108.   The acts and omissions described above were material to contract approvals, grant approvals, audit and monitoring approval and payments by California.

109.    The acts and omissions described above caused damages to California, in substantial amounts to be determined at trial.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

**To the State of California:**

(1) Three times the amount of actual damages which California has sustained as a result of Defendants' conduct;

(2) A civil penalty for each false statement which Defendants made, used or caused to be made or used to get false or fraudulent claims paid or approved by the California, in violation of Ca. Govt. Code § 12651(a)(2).

(3) Pre- and post-judgment interest; and

(4) All costs incurred in bringing this action.

**To the Relator:**

(1) The maximum amount allowed pursuant to § 12652(g)(1)(C)(2) of the CA FCA and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3) An award of reasonable attorney's fees, costs and expenses; and

(4) Such further relief as this Court deems equitable and just.

**VI**
**VIOLATION OF THE CALIFORNIA FALSE CLAIMS ACT – REVERSE FALSE CLAIMS**
**(Ca. Govt. Code § 12651(a)(7))**

110.    By virtue of the acts and omissions described above, defendants, and each of them, knowingly made, used or caused to made or used, a false record or statement material to an obligation to pay or transmit money to

the Government, or knowingly concealed, or knowingly and improperly avoided an obligation to pay or transmit money or property to the California in violation Ca. Govt. Code § 12651(a)(7).

111.    The acts and omissions described above caused damages to the United States, in substantial amounts to be determined at trial.

**To California:**

(1) Three times the amount of actual damages which the California has sustained as a result of Defendants' conduct;

(2) A civil penalty for each false record or statement defendants made or used material to an obligation to pay or transmit money to California;

(3) Pre- and post judgment interest; and

(4) All costs incurred in bringing this action.

**To the Relator:**

(1) The maximum amount allowed pursuant to § 12652(g)(1)(C)(2) of the CA FCA and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3) An award of reasonable attorney's fees, costs and expenses; and

(4) Such further relief as this Court deems equitable and just.

**VII**
**VIOLATION OF SUBSECTION (H) OF THE FALSE CLAIMS ACT**
**AND CALIFORNIA LABOR CODE SECTION 1102.5**

135. By virtue of the acts and omissions described above, defendants Matthew Wayne, Miriam Delgadillo, Luci Rogers; Tammy Watson and Hayward Unified School District and each of them violated 31 USC §3730(h) of the False Claims Act and California Labor Code §1102.5.

136. The conduct of the defendants, and each of them, violated 31 USC §3730(h) of the False Claims Act and California Labor Code §1102.5.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the Relator against the Defendants HUSD, MATTHEW WAYNE, MIRIAM DELGADILLO; LUCI ROGERS; TAMMY WATSON, and each of them:

1. **Reinstatement** of the Relator to his former position of employment with the same seniority that the Relator would have had but for the retaliatory conduct alleged in this Second Amendment Complaint;

2. **Double** the amount of back pay lost by Relator on account of the conduct of Defendants;;

3. **Interest** on back pay;

4. Compensation for Relator's **emotional and physical damages;**

5. Reimbursement of related **medical expenses** incurred by Relator as the result of defendants' conduct;

6. Relator's reasonable **attorney fees** incurred in this matter;

7. Relator's **costs** of suit;

8. Such other relief as may be just, fair and proper.

THE JAFFE LAW FIRM,

By: _____
Stephen R. Jaffe (CSBN 49539)
Attorneys for Relator STEVEN FALLON

### DEMAND FOR JURY TRIAL

Relator demands a jury trial on all claims alleged herein.

THE JAFFE LAW FIRM,

By:__/s/ Stephen R. Jaffe _____
Stephen R. Jaffe (CSBN 49539)
Attorneys for Relator STEVEN FALLON