UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, ex rel.,
STEVEN FALLON, et al.,

        Plaintiffs-Relators,

      v.

BELL TRANSIT CORP., et al.,

        Defendants.

Case No. 16-cv-06994-PJH

**ORDER RE MOTIONS TO DISMISS
AND MOTION TO STRIKE AND
ORDER TO SHOW CAUSE RE
UNSERVED DEFENDANTS**

RE Dkt. Nos. 83, 84, 99

Before the court is a motion to dismiss filed by defendant Hayward Unified School District ("HUSD"), a motion to dismiss filed by defendant Bell Transit Corp., and a motion to strike filed by plaintiff-relator Steven Fallon ("plaintiff" or "relator"). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

This is a False Claims Act case. Plaintiff-relator Steven Fallon is a former employee of Hayward Unified School District ("HUSD"), and in his complaint, he alleges a five-year scheme by HUSD and others to defraud California and the United States out of millions of dollars paid to HUSD for providing transportation services to disabled students.

The operative second amended complaint ("SAC") was filed on August 24, 2020, naming as defendants HUSD, certain of its employees (the "individual defendants"), and three private entities, Bell Transit Corporation ("Bell Transit"), MCET Affordable Transportation ("MCET"), and Functional Floors ("Functional Floors"). Dkt. 82. MCET and Functional Floors have not appeared in the case and appear not to have been served. That leaves as defendants only HUSD, Bell Transit, and the individual

1   defendants: HUSD employees Matthew Wayne (HUSD associate superintendent during

2   the relevant time period), Miriam Delgadillo (HUSD office specialist), Luci Rogers (HUSD

3   chief financial officer during the relevant time period), and Tammy Watson (HUSD

4   director of special education during the relevant time period).  SAC, ¶¶ 20, 22, 25, 27.

5        The false claim allegations fall into three categories: (1) inflating the number of

6   special needs students in need of individual student transportation (SAC, ¶¶ 48-56), (2)

7   splitting transportation bids to avoid the $45,000 threshold for requiring school board

8   approval and competitive bidding (SAC, ¶¶ 57-72), (3) failing to disclose a conflict of

9   interest between a HUSD employee and her son, an employee of Bell Transit (SAC,

10  ¶¶ 73-82).[1]

11       As to category (1), Fallon alleges that a school district typically uses individual

12  student transportation (also referred to as "taxi transportation") for approximately 15

13  students out of every 100,000 students.  SAC, ¶ 50.  However, when Fallon started

14  working at HUSD, he observed that a "disproportionate amount" of students were being

15  transported by taxi.  SAC, ¶ 52.  Taxi transportation accounted for 42% of HUSD's

16  transportation budget for the 2015-16 school year.  Id.  Fallon complained about the

17  problem, and the next year, the number of taxi-transported students fell from 149 to 13.

18  SAC, ¶ 53.  In the five years preceding Fallon's complaint, the number of taxi-transported

19  students had never been below 135.  SAC, ¶ 54.  Fallon alleges that his complaint

20  revealed that over 90% of the students receiving individual transportation did not actually

21  need it.  SAC, ¶ 53.

22       As to category (2), Fallon alleges that the special education taxi contracts were

23  subject to school board approval and competitive bidding requirements if they exceeded

24  $45,000.  SAC, ¶ 61.  Fallon alleges that defendants Watson and Delgadillo falsely

25

26  _____

27  [1] Fallon also briefly argues that defendants "falsely characterized" the relevant contracts
    as independent-contractor contracts, and purports to attach two exhibits in support (see
    Dkt. 94 at 6, lines 24-25), but no exhibits were actually attached.  Because these
28  allegations are not developed, and because Fallon offers no authority for this type of
    mischaracterization rendering a contract void, the court will not address this argument.

structured the contracts to avoid those requirements.  SAC, ¶ 58.

For example, Fallon alleges that, for the 2015-16 school year, defendants Watson and Delgadillo priced Bell Transit's initial contract at $41,700 to avoid the $45,000 threshold, then incrementally increased the contract 16 times over the course of the school year, resulting in a final contract amount of over $2 million.  SAC, ¶ 61.  Fallon argues that California public contracting law makes it unlawful to "split" a contract or "separate [it] into smaller work orders" for purposes of evading competitive bidding requirements.  SAC, ¶ 60 (citing Cal. Pub. Contract Code § 20116).  Fallon argues that the bid-splitting rendered the taxi contracts void, and that any claim for payment on those void contracts was false/fraudulent.

Fallon also provides an example of a transportation contract for Bell Transit that was submitted to the school board on October 26, 2016, by defendant Wayne, without having been subjected to the required competitive bidding process.  SAC, ¶¶ 65-72.

As to category (3), Fallon alleges that Bell Transit hired Emmanuel Delgadillo[2], the son of HUSD employee Miriam Delgadillo, because Bell Transit knew that Miriam Delgadillo "could control the award and amount of taxi service contracted for by HUSD." SAC, ¶ 78.  Fallon alleges that Bell Transit's failure to disclose this conflict of interest was a material omission from each transportation contract.  SAC, ¶ 81.  Fallon also alleges that, through Emmanuel, Bell Transit knew that HUSD was inflating the number of students for whom taxi transportation was needed.  SAC, ¶ 82.

Separate from the three categories of alleged false claims, Fallon also asserts a cause of action for employment retaliation.  Specifically, Fallon alleges that, as a result of reporting the alleged false claims, he was subjected to "severe harassment" including "multiple threats of termination of employment," and that his job was ultimately eliminated due to a pretextual "budget shortfall."  SAC, ¶ 93.

---

[2] Fallon also alleges that Emmanuel Delgadillo was an employee of MCET before being hired by Bell Transit, but because MCET has not appeared in this case, any allegations regarding MCET are not relevant to these motions.

United States District Court
Northern District of California

Based on the above allegations, Fallon asserts seven causes of action:

(1) Presentation of false claims in violation of the federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A), against all defendants,

(2) Making materially false records or statements in violation of the federal False Claims Act, 31 U.S.C. § 3729(a)(1)(B), against all defendants,

(3) Knowingly concealing or avoiding an obligation to pay (i.e., "reverse false claims") in violation of the federal False Claims Act, 31 U.S.C. § 3729(a)(1)(G), against all defendants,

(4) Presentation of false claims in violation of the California False Claims Act, Cal. Gov't Code § 12651(a)(1), against all defendants,

(5) Making materially false records or statements in violation of the California False Claims Act, Cal. Gov't Code § 12651(a)(2), against all defendants,

(6) Knowingly concealing or avoiding an obligation to pay (i.e., "reverse false claims") in violation of the California False Claims Act, Cal. Gov't Code § 12651(a)(7), against all defendants,

(7) Retaliation in violation of 31 U.S.C. § 3730(h) and Cal. Labor Code § 1102.5, against defendants HUSD, Wayne, Delgadillo, Rogers, and Watson.

HUSD and Bell Transit have both filed motions to dismiss the SAC in its entirety, without leave to amend. Fallon has filed a motion to strike certain arguments made in Bell Transit's reply, arguing they constitute "new argument."

**DISCUSSION**

**A.     Legal standard**

**1.     Motion to dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be

United States District Court
Northern District of California

1   accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The complaint must proffer

2   sufficient facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v.

3   Twombly, 550 U.S. 544, 555, 558–59 (2007) (citations and quotations omitted).

4        A claim has facial plausibility when the plaintiff pleads factual content that allows

5   the court to draw the reasonable inference that the defendant is liable for the misconduct

6   alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not

7   permit the court to infer more than the mere possibility of misconduct, the complaint has

8   alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'"  Id. at 679.  Where

9   dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

10  cannot be saved by any amendment.  Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir.

11  2005).

12       Because at least some of plaintiff's claims sound in fraud, the complaint must also

13  meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  See

14  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires a

15  party alleging fraud or mistake to state with particularity the circumstances constituting

16  fraud or mistake.  To satisfy this standard, the "complaint must identify the who, what,

17  when, where, and how of the misconduct charged, as well as what is false or misleading

18  about the purportedly fraudulent statement, and why it is false."  Salameh v. Tarsadia

19  Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks

20  omitted).

21       Review is generally limited to the contents of the complaint, although the court can

22  also consider a document on which the complaint relies if the document is central to the

23  claims asserted in the complaint, and no party questions the authenticity of the

24  document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).  The court may

25  consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393

26  F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th

27  Cir. 2001), and may also consider exhibits attached to the complaint, see Hal Roach

28  Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and

*United States District Court*
*Northern District of California*

1    documents referenced extensively in the complaint and documents that form the basis of

2    the plaintiff's claims.  See No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am.

3    W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

4        If dismissal is warranted, it is generally without prejudice, unless it is clear that the

5    complaint cannot be saved by any amendment.  Sparling, 411 F.3d at 1013.

6        **2.    Motion to strike**

7        Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a

8    pleading any insufficient defense or any redundant, immaterial, impertinent, or

9    scandalous matter."  Fed. R. Civ. P. 12(f).  "The function of a [Rule] 12(f) motion to strike

10   is to avoid the expenditure of time and money that must arise from litigating spurious

11   issues by dispensing with those issues prior to trial."  Whittlestone, Inc. v. Handi-Craft

12   Co., 618 F.3d 970, 973 (9th Cir. 2010).

13       Motions to strike are not favored and "should not be granted unless it is clear that

14   the matter to be stricken could have no possible bearing on the subject matter of the

15   litigation."  Colaprico v. Sun Microsystem, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

16   When a court considers a motion to strike, it "must view the pleadings in light most

17   favorable to the pleading party."  Uniloc v. Apple, Inc., 2018 WL 1640267, at *1 (N.D. Cal.

18   Apr. 5, 2018).  A court must deny the motion to strike if there is any doubt whether the

19   allegations in the pleadings might be at issue in the action.  In re 2TheMart.com, Inc.,

20   Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).  Ultimately, the decision "to grant

21   a motion to strike lies within the sound discretion of the district court."  Rees v. PNC

22   Bank, N.A., 308 F.R.D. 266, 271 (N.D. Cal. 2015).

23   **B.    Legal Analysis**

24       **1.    HUSD's motion to dismiss**

25           **a.    School district immunity**

26       In its motion to dismiss, HUSD argues that it is immune from liability under both

27   the federal and state False Claims Act.  It argues that California school districts are "arms

28   of the state" and thus entitled to state sovereign immunity.  HUSD also argues that both

United States District Court
Northern District of California

6

the federal and state versions of the FCA impose liability only on a "person" who makes a false claim, and that a school district is not a "person" for purposes of the statutes.

Fallon's opposition does not contest the immunity of the school district.

The Ninth Circuit has indeed concluded that school districts are immune from FCA liability.  Stoner v. Santa Clara Office of Educ., 502 F.3d 1116 (9th Cir. 2007). The Stoner court first explained that the FCA subjects to liability any "person" who knowingly presents, or causes to be presented, a false claim for payment to the government.  Id. at 1121.  Prior to Stoner, the Supreme Court had held that a state agency is not a "person" for FCA purposes.  Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 787-88 (2000).  The Stoner court applied that reasoning and held that school districts are arms of the state and thus immune to FCA liability.[3]  502 F.3d at 1123.

Importantly, the Stoner court specifically concluded that, even if the language of the FCA did not limit liability only to "persons," the school district would still be immune under the Eleventh Amendment.  502 F.3d at 1123.  In other words, there was both a statutory and a constitutional basis for finding the school district immune.

The California Supreme Court in Wells v. One2One Learning Foundation also concluded that, under the California False Claims Act, public school districts may not be sued because they are not "persons" under the Act.  39 Cal.4th 1164, 1189-90 (2006).

Thus, because HUSD is immune to claims brought under the federal and state False Claims Act, its motion to dismiss is GRANTED on that basis and the first through sixth causes of action against it are DISMISSED without leave to amend.

      **b.**     **Individual immunity**

While Fallon does not contest the immunity of the school district, he does contest the immunity of the individual school district defendants.  The school district defendants

---

[3] The court notes that this holding applies only to FCA claims involving false claims for payment.  The issue of immunity for FCA-related retaliation claims will be discussed separately below.

United States District Court
Northern District of California

are: Matthew Wayne, Miriam Delgadillo, Luci Rogers, and Tami Watson.  The SAC states that these defendants are being sued in their individual capacities.  SAC, ¶¶ 20, 21, 24, 26.

HUSD argues that the employees were acting "within the course and scope of their employment," and thus should be entitled to the same immunity as their public-entity employer.

The Ninth Circuit in <u>Stoner</u> addressed the issue of individual defendant immunity for state employees.  502 F.3d 1116.  The court concluded that "state employees sued in their individual capacities are persons who may be subject to liability for submitting a false claim to the United States."  502 F.3d at 1124.  As mentioned above, the SAC specifies that the individual HUSD defendants are being sued in their individual, not official, capacities.  And because the California FCA is "patterned after" the federal FCA, defendants acting outside the scope of their employment would not be immune under either law.  <u>Wells</u>, 39 Cal.4th at 1187.

HUSD makes the related argument that, because the school district indemnifies its employees, a suit against the individual employees is "tantamount" to a suit against the district, and thus the same immunity should apply.

However, indemnification would apply only if the individual defendants were acting in the scope of their employment.  As mentioned above, Fallon alleges that the individual defendants were acting outside of their scope of employment in this case.  Moreover, the <u>Stoner</u> court directly addressed the indemnification argument, holding that "the fact that a state may choose to indemnify the employees for any judgment rendered against them" does not change the immunity analysis.  502 F.3d at 1125.

Thus, because Fallon alleges that the individual defendants were not acting within the scope of their employment, the court denies HUSD's motion to the extent that it seeks dismissal of the FCA claims against the individual defendants based on immunity.

### c.    Sufficiency of the pleadings under Rule 9(b)

Having already determined that the school district should be dismissed as immune

from FCA liability, the court will now address whether the SAC adequately states a claim against the individual HUSD defendants: Wayne, Delgadillo, Rogers, and Watson.

HUSD argues that the SAC does not state a claim against defendants Delgadillo or Watson because it uses conclusory terms like "falsely" and "illegally" without actually alleging the "specific content of the false representations." HUSD addresses the bid-splitting allegations, arguing that they "describe nothing more than internal contract practices by a school district." Dkt. 84 at 20. Regarding the alleged conflict of interest between Delgadillo and her son Emmanuel, HUSD argues that even if Delgadillo were "inflating" business for Bell Transit, she may have done so because "they were easier to work with and sent them more business." Dkt. 84 at 21.

HUSD argues that the SAC does not state a claim against Rogers because the only allegation is that she "approved the increments" of the 2015-16 contract with Bell Transit. Dkt. 84 at 21.

HUSD then discusses the allegations against defendant Wayne. The SAC alleges that he submitted a proposed contract to the school board that "misrepresented and substantially overstated the number of students" transported by Bell Transit in 2015-16, and also "overstated the number of students to be served by Bell Transit in the 2016-17 school year." Dkt. 84 at 21. The SAC further alleges that Wayne submitted the contract for board approval without any public bidding process, even though a public bidding process was required. HUSD argues that these allegations are "not specific enough" to give Wayne "notice of the particular misconduct" alleged. HUSD also argues that the SAC does not allege that Wayne actually presented a fraudulent statement to the government, because Fallon alleges that he "himself prevented Wayne from moving forward with any improper conduct."

Fallon's opposition argues that Delgadillo and Watson caused false claims to be submitted "by reason of the falsely inflated charges issued in the contract." Fallon further argues that "defendants" created false records "in the form of falsely characterized contracts and work orders related to their bid-splitting." Fallon also argues that any

9

United States District Court
Northern District of California

1  contracts issued in violation of state bid-splitting laws are automatically rendered void,

2  making any payment on them illegal.  Fallon similarly argues that the "fatal" conflict of

3  interest between HUSD employee Delgadillo and her son Emmanuel at Bell Transit

4  rendered the relevant contracts void.

5        The Ninth Circuit has spelled out the level of detail needed to withstand a Rule

6  9(b) challenge in a false claims case.  <u>Ebeid ex rel. U.S. v. Lungwitz</u>, 616 F.3d 993, 998

7  (9th Cir. 2010).  In <u>Ebeid</u>, a plaintiff-relator filed suit against a physician who owned a

8  health-care business, based on the generalized claim that the physician was "engaged in

9  the unlawful corporate practice of medicine," thus making all of the business's Medicare

10  claims fraudulent.  616 F.3d at 995.  The court concluded that these allegations lacked

11  the particularity required by Rule 9(b), as they were instead a "global indictment" of the

12  defendant's business.  <u>Id.</u> at 1000.  However, the <u>Ebeid</u> court also explained the level of

13  specificity that would be needed, and took a position that was less exacting than some

14  other circuits.

15        Specifically, at the time <u>Ebeid</u> was decided, some circuits had taken the position

16  that a plaintiff-relator must identify "representative examples of false claims to support

17  every allegation."  The <u>Ebeid</u> court rejected that approach, and instead "join[ed] the Fifth

18  Circuit in concluding, in accord with general pleading requirements under Rule 9(b), that

19  it is sufficient to allege 'particular details of a scheme to submit false claims paired with

20  reliable indicia that lead to a strong inference that claims were actually submitted.'"  616

21  F.3d at 998-99 ("In our view, use of representative examples is simply one means of

22  meeting the pleading obligation.").

23        Thus, the relevant standard for analyzing the SAC's allegations is whether they

24  allege "particular details of a scheme" to submit false claims, along with "reliable indicia

25  that lead to a strong inference that claims were actually submitted."  The court will now

26  apply the <u>Ebeid</u> standard to the three categories of alleged wrongdoing, as set forth in the

27  'background' section of this order.

28

### i.      Alleged wrongdoing – category (1)

Category (1) covers the complaint's allegations that HUSD employees were inflating the number of special needs students in need of taxi transportation.  See SAC, ¶¶ 48-56.

The alleged "falsity" is straightforward here – the number of students needing transportation.  Fallon alleges that the individual HUSD defendants falsely overstated the number of students needing individual transportation.

Also, the fact that the number of individually-transported students was so drastically decreased after Fallon's complaint serves as "reliable indicia" that false claims were actually submitted.  As alleged in the SAC, no fewer than 135 students per year received individual transportation from 2011 to 2016.  Then, after Fallon complained, the number dropped to 13 the next year.  SAC, ¶¶ 53-54.

HUSD takes issue with Fallon attributing a "monetary" motive to the individual defendants without more specificity, but the Ninth Circuit has actually held that a plaintiff-relator "need not allege that the individual defendants personally profited from such false submissions."  Stoner, 502 F.3d at 1124.  The FCA requires only a false submission, it does not require the person making a false submission "to obtain a personal benefit from the wrongful act."  Id.; see also U.S. v. Bourseau, 531 F.3d 1159, 1167 (9th Cir. 2008) ("No proof of specific intent to defraud is required.  The requisite intent is the knowing presentation of what is known to be false, as opposed to innocent mistake or mere negligence.").

As to the allegations of category (1), Fallon has adequately stated a claim for "presentation" of false claim under section 3729(a)(1)(A) and making a "false record or statement" under section 3729(a)(1)(B) (and their state law equivalents)[4] as to defendants Delgadillo and Watson, who are alleged to have "handled exclusively" the taxi contracts.  SAC, ¶ 57.  HUSD's motion to dismiss is DENIED to the extent that it seeks dismissal of those claims.

---

[4] The court will separately discuss the "reverse False Claims Act" causes of action below.

United States District Court
Northern District of California

As to defendant Wayne, the complaint alleges that he presented documents to the school board that "overstated" the number of students needing/receiving transportation. SAC, ¶ 67.  Because this case is still in the pleading stage, the court concludes that Fallon has adequately alleged the "particular details of a scheme" to submit false claims, along with "reliable indicia that lead to a strong inference" that the claims were actually submitted, and Wayne's inflation of numbers is alleged to be part of the same scheme as Delgadillo and Watson's alleged inflation of numbers.  Accordingly, HUSD's motion to dismiss is DENIED to the extent it seeks dismissal of the category (1)-related claims for "presentation" of false claim under section 3729(a)(1)(A) and making a "false record or statement" under section 3729(a)(1)(B) (and their state law equivalents) as to defendant Wayne.

The complaint does not allege that defendant Rogers was involved in any alleged number-inflation.  Thus, HUSD's motion to dismiss is GRANTED as to defendant Rogers as to all claims related to category (1).  However, out of an abundance of caution, the court will grant leave to amend, to allow plaintiff to have one additional opportunity to state a claim against defendant Rogers relating to the alleged inflation of the number of students needing individual taxi transportation.

### ii.      Alleged wrongdoing – category (2)

Category (2) covers the allegations that the HUSD defendants split bids to avoid the $45,000 threshold for requiring school board approval and competitive bidding.  See SAC, ¶¶ 57-72.

In contrast to category (1), the alleged "falsity" in category (2) is not as straightforward.  While it is true that California public contracting law prohibits the splitting of projects for the purpose of evading competitive bidding, it does not automatically follow that submission of an unlawfully-split contract is "false" or "fraudulent."

While there is no controlling authority on point, the parties' arguments focus on a relevant case from the D.C. Circuit, U.S. ex rel. Siewick v. Jamieson Science and Engineering, Inc., 214 F.3d 1371 (D.C. Cir. 2000).  The relevant law at issue in Siewick

1   was a "revolving door" restriction on former government employees working on

2   government contracts.  The <u>Siewick</u> relator argued that every contract on which the

3   former government employee worked was "tainted" by the revolving door violation, and

4   thus "self-destructed into voidness." <u>Id.</u> at 1375, 1376.  The court rejected that argument,

5   holding instead that any revolving door violation merely gave the government the option

6   to void the contract.  <u>Id.</u> at 1377.  The court explained that the government could have

7   many reasons for continuing to honor the contract: "the officials authorized to decide

8   might regard the violation as minor, they might think that the criminal penalties provide

9   ample punishment of the present violation and deterrence of future ones, [or] they might

10  be concerned that disaffirmance would unduly impede future transactions with the

11  contracting firm." <u>Id.</u>  In short, "longrun interests often argue against pushing legal rights

12  to the hilt." <u>Id.</u>

13          A state appeals court reached a similar conclusion in another case, concluding

14  that improper contracts may be "declared void," but are not automatically rendered void.

15  <u>San Bernadino County v. Superior Court</u>, 239 Cal.App.4th 679 (2015).

16          Fallon does cite case law for the proposition that the competitive bidding

17  requirement in this case is different than the "revolving door" rules in <u>Sienick</u>.

18  Specifically, Fallon cites a California Supreme Court case from 1942 stating that

19  municipal contracts approved without the required competitive bidding process are "void"

20  and "cannot be ratified." <u>Miller v. McKinnon</u>, 20 Cal.2d 83, 88 (1942).  However, other

21  than providing a citation to <u>Miller</u>, Fallon does not connect the dots and provide examples

22  of courts applying <u>Miller</u> to the context of the False Claims Act.  Based on the arguments

23  made in the papers, HUSD's motion is GRANTED as to the category (2)-related

24  allegations against all individual defendants.  However, Fallon is granted leave to amend.

25                    **iii.        Alleged wrongdoing – category (3)**

26          Category (3) covers the allegations that the HUSD defendants failed to disclose a

27  conflict of interest between HUSD employee Miriam Delgadillo and her son Emmanuel,

28  an employee of Bell Transit.  <u>See</u> SAC, ¶¶ 73-82.

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1    The alleged "falsity" is not straightforward here.  Fallon's theory is that the failure

2    to disclose the conflict of interest rendered it void, and therefore false.  In that sense, this

3    theory is similar to the competitive bidding theory.  And Fallon has also cited case law

4    where the California Supreme Court held that a contract affected with a "prohibited"

5    financial conflict of interest is "void from its inception."  Lexin v. Superior Court, 47 Cal.4th

6    1050, 1073 (2010).  However, the Lexin court also acknowledged that not every conflict

7    of interest renders a contract void.  Some alleged conflicts might be only "remote"

8    interests, and some might implicate only "minimal" interests, and in those instances, the

9    contracts would not automatically be rendered void.  Id.

10    More importantly, as with category (2), Fallon provides no support for connecting

11    the dots between an allegedly-invalid contract and a False Claims Act cause of action.

12    As a result, the court GRANTS HUSD's motion to the extent it seeks dismissal of the

13    category (3) allegations against the individual defendants.  Again, out of an abundance of

14    caution, the court grants plaintiff leave to amend.

15                     **d.       Reverse false claims**

16    The court addresses the "reverse false claims" causes of action separately

17    because they can be dismissed as a whole, regardless of the allegation categories.  A

18    "reverse" FCA claim is called "reverse" because, rather than fraudulently taking money

19    from the government, these claims cover the fraudulent failure to return money owed to

20    the government.  The Ninth Circuit has explained that a "reverse" FCA claim cannot be a

21    simple repackaging of a standard FCA claim, because "Congress intended the reverse

22    false claims provision to apply only to existing legal duties to pay or deliver property."

23    U.S. v. Bourseau, 531 F.3d 1159, 1169 (9th Cir. 2008) (internal citation omitted).

24    The reverse FCA causes of action in this case are merely repackaged versions of

25    standard FCA claims.  Fallon claims that defendants wrongfully claimed money from the

26    government, and then claims that the retention of that falsely-claimed money is itself a

27    reverse claims act violation.  That is not what the statute was intended to cover.

28    The Bourseau case explains what a successful reverse FCA cause of action looks

14

1   like.  In that case, the defendant was a Medicare provider, and received estimated

2   "interim" payments from the government throughout the year for covered Medicare

3   services.  At the end of each reporting period, the provider was required to report any

4   "overpayments" made by the government.  A bench trial established that the defendant

5   had "concealed and decreased amounts they were obligated to repay to Medicare," and

6   thus were liable for a reverse FCA claim.  531 F.3d at 1170.  That is not the situation

7   alleged in the SAC, and thus, HUSD's motion is GRANTED to the extent it seeks

8   dismissal of both the federal and state reverse FCA causes of action.  Because this

9   deficiency could not be cured by amendment, no leave to amend is granted.

                    **e.    Retaliation**
                        **i.    School district liability**

12          HUSD argues that its immunity from FCA liability should also provide immunity

13   from liability for a retaliation claim.  As mentioned above, Fallon did not actually contest

14   the district's immunity.

15          HUSD largely relies on the reasoning of the Ninth Circuit's opinion in <u>Stoner</u>.

16   However, the case does not apply with the same force here.  As discussed above, the

17   <u>Stoner</u> court found that school districts were immune from FCA liability for two reasons:

18   (1) the FCA "presentation" and "false records" provisions limit liability only to "a person"

19   who violates the statute, and a school district was not a person, and (2) the Eleventh

20   Amendment precludes liability against an arm of the state.

21          In the context of retaliation claims, argument (1) does not apply, because the Ninth

22   Circuit has held that section 3730(h) applies to "employers," not just to "persons."

23   <u>Hopper v. Lockheed Martin Corp.</u>, 668 F.3d 1037, 1044 (9th Cir. 2012).  While a school

24   district is not a "person," it can be an "employer."

25          Argument (2) does appear to apply to the school district.  That said, HUSD cites a

26   Ninth Circuit case where the court did not find a school district to be automatically

27   immune from retaliation liability under section 3730, and instead examined the facts to

28   see if the district was liable.  <u>U.S. ex rel. Hopper v. Anton</u>, 91 F.3d 1261 (9th Cir. 1996).

1   Because Fallon did not challenge the school district's immunity, the court

2   considers Fallon to have waived any opposition to the argument, and the court will

3   GRANT HUSD's motion to dismiss the retaliation claim against the school district without

4   leave to amend.  The court does not reach the merits of whether a school district is

5   automatically immune from retaliation liability under section 3730.

6                              ii.      **Individual liability**

7   The next issue is the viability of Fallon's retaliation claims against the individual

8   HUSD defendants.

9   As mentioned above, the federal FCA retaliation statute has been interpreted to

10  impose liability only on an "employer" who retaliates against an employee.  HUSD argues

11  that the individual defendants were not Fallon's "employer," and thus cannot be subjected

12  to liability under the FCA.  However, HUSD cites no controlling case law for this

13  proposition under federal law.  In fact, it again cites Hopper, which undercuts its

14  argument, because in Hopper, a retaliation claim against an individual defendant (the

15  school principal) went all the way to a jury.  91 F.3d at 1269.

16  However, even if individual defendants can be theoretically held liable for

17  retaliation under federal law, the complaint still lacks any specific retaliation-related

18  allegations against any individual defendants.  For that reason, HUSD's motion to dismiss

19  the seventh cause of action is GRANTED as to the individual defendants, though Fallon

20  will be given leave to amend this claim as to the individual defendants.

21  The state-law retaliation analysis is different.  The state retaliation law originally

22  limited its applicability to an "employer," but it was amended in 2014 to also cover "any

23  person acting on behalf of an employer."  Cal. Labor Code § 1102.5(a).  However, even

24  after the amendment, courts have been unwilling to conclude that individual employees

25  may be liable for retaliation.  See Minor v. FedEx Office & Print Services, 182 F.Supp.3d

26  966, 990 (N.D. Cal. 2016) ("the court declines to determine whether individual liability is

27  available under § 1102.5."); see also United States ex rel. Lupo v. Quality Assurance

28  Services, Inc., 242 F.Supp.3d 1020, 1030 (S.D. Cal. 2017) ("the court concludes that if

16

1    the California Supreme Court were ever to consider the issue, it would hold that there can

2    be no individual liability under section 1102.5.").  That said, there is no controlling Ninth

3    Circuit authority on the issue.

4         Even putting aside the immunity issue, the complaint does not allege any specific

5    retaliation-related conduct by the individual defendants.  For that reason, the state-law

6    retaliation claim is DISMISSED, but out of an abundance of caution, Fallon will be given

7    leave to amend his state law retaliation claim against the individual defendants.[5]

8         **2.    Bell Transit's motion to dismiss**

9         Some of the issues raised by Bell Transit's motion were already addressed above

10   in the context of HUSD's motion, so the court will not repeat the analysis here.  For

11   instance, the reverse FCA claims are dismissed for the same reasons explained above.

12   And the claims arising out of categories (2) and (3) of the false claim allegations (i.e., the

13   public bidding-related and conflict of interest-related allegations) are dismissed, with

14   leave to amend, for the same reasons.

15        Other issues raised by HUSD – specifically, issues of immunity and retaliation –

16   are not implicated by Bell Transit's motion, so they will not be discussed here.

17        The only remaining issues raised by this motion revolve around the sufficiency of

18   the category (1) allegations (i.e., inflating the number of special needs students in need of

19   taxi transportation) as asserted against Bell Transit.

20        A threshold issue raised by Bell Transit is the argument that Emmanuel Delgadillo

21   never actually worked for Bell Transit.  Bell Transit first hints at this argument in a

22   footnote in their motion (Dkt. 83 at 9, n.1), and then in the reply, it states that Emmanuel

23   "in fact never worked at Bell Transit, *see infra* II.G," but there is no section II.G – the reply

24   goes from section II.F to section III.  Dkt. 98 at 12.

25        The presumed reason why Bell Transit mentions this issue only obliquely is that it

26

27   _____

     [5] HUSD also argues that the federal and state retaliation claims should be dismissed for
28   failure to state claims in separate counts as required by Rule 10(b).  The court declines to
     impose such a penalty, though it does direct plaintiff to plead federal and state retaliation
     claims separately if he chooses to re-plead them in an amended complaint.

United States District Court
Northern District of California

1   appears to concede that "the time to contest factual allegations is not now."  Dkt. 83 at 9,

2   n.1.  However, even taking the allegations as true that Emmanuel was an employee of

3   Bell Transit, the basis for charging Bell Transit with knowledge of the alleged inflation

4   scheme is not adequately alleged in the complaint.

5          In fact, the overall problem with the allegations against Bell Transit is that, even if

6   the court finds the inflation-related allegations to state a claim, those allegations do not

7   make clear how Bell Transit was involved in the actual presentation of a false claim (or

8   any related false records/statements).  While Bell Transit may have benefitted from any

9   false inflation of student transportation needs made by HUSD, Fallon has not adequately

10  alleged facts showing that Bell Transit was involved in either presenting a false claim, or

11  causing a false claim to be presented, or causing a false record to be made or used.  For

12  that reason, Bell Transit's motion to dismiss is GRANTED.  For the same reasons

13  described above in the context of HUSD's motion, Fallon is granted leave to amend his

14  first, second, fourth, and fifth causes of action against Bell Transit.  Fallon is not granted

15  leave to amend on his third and sixth causes of action for reverse false claims.

16         **3.    Fallon's motion to strike**

17         After Bell Transit filed its reply brief, Fallon filed a motion to strike Bell Transit's

18  allegedly-new arguments regarding the requirements of state contracting law.  Bell

19  Transit filed an opposition/response stating that the arguments were responsive to

20  arguments raised in Fallon's opposition brief, but also expressing its willingness to

21  withdraw the challenged arguments, because the specifics of state contracting law are

22  not critical to its argument that the complaint should be dismissed.

23         The court did not rely on the challenged arguments, and thus Fallon's motion to

24  strike is DENIED as moot.

25                              **CONCLUSION**

26         For the foregoing reasons, the court rules as follows.  HUSD's motion to dismiss is

27  GRANTED on all claims asserted against HUSD, without leave to amend.

28         As to the individual defendants, HUSD's motion to dismiss is GRANTED in part

18

and DENIED in part.  Specifically, HUSD's motion to dismiss is DENIED as to defendants Delgadillo, Watson, and Wayne on the first, second, fourth, and fifth causes of action, to the extent those causes of action are based on the allegation that defendants inflated the number of students needing individual transportation.  HUSD's motion to dismiss is GRANTED, with leave to amend, as to all individual defendants on the remaining portions (i.e., the bid-splitting allegations and the conflict-of-interest allegations) of the first, second, fourth, and fifth causes of action.

HUSD's motion to dismiss is GRANTED, without leave to amend, as to the third and sixth causes of action (reverse false claims) asserted against all individual defendants.  HUSD's motion to dismiss is GRANTED, with leave to amend, as to all individual defendants on the seventh cause of action for retaliation.

Bell Transit's motion to dismiss is GRANTED, with leave to amend, as to the first, second, fourth, and fifth causes of action.  Bell Transit's motion to dismiss is GRANTED, without leave to amend, as to the third and sixth causes of action.

Fallon's motion to strike is DENIED as moot.

Fallon shall have 21 days from the date of this order to file a third amended complaint to cure the deficiencies noted in this order.  No new claims or parties may be added without leave of court or the agreement of all parties.  The court also sets a case management conference for May 20, 2021, at 2:00 p.m.

The court hereby enters an ORDER TO SHOW CAUSE why defendants MCET and Functional Floors should not be dismissed for plaintiff's failure to timely serve them the original, first amended, and second amended complaints in violation of Fed. R. Civ. P. § 4(m).  A written response to the OSC or a dismissal of these defendants must be filed within 7 days from the date of this order.

**IT IS SO ORDERED.**

Dated:  March 15, 2021

_/s/ Phyllis J. Hamilton_
PHYLLIS J. HAMILTON
United States District Judge