UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, ex rel., STEVEN FALLON, et al.,

Plaintiffs-Relators,

v.

BELL TRANSIT CORP., et al.,

Defendants.

Case No. 16-cv-06994-PJH

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS THIRD AMENDED COMPLAINT**

Re: Dkt. Nos. 114, 115

Before the court are two motions to dismiss the third amended complaint ("TAC"). The first was filed by defendants Matthew Wayne, Miriam Delgadillo, Luci Rogers, and Tammy Watson. See Dkt. 114. The second motion to dismiss was filed by defendant Bell Transit Corporation. See Dkt. 115. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

This is a False Claims Act case. Plaintiff-relator Steven Fallon is a former employee of Hayward Unified School District ("HUSD"), and in his complaint, he alleges a five-year scheme by HUSD employees and others to defraud California and the United States out of millions of dollars paid to HUSD for providing transportation services to disabled students.

Defendants Wayne, Delgadillo, Rogers, and Watson (collectively, the "HUSD defendants") were HUSD employees during the time period relevant to this lawsuit. Specifically, Wayne was HUSD associate superintendent, Delgadillo[1] was a HUSD office

---

[1] Defendants' motion refers to Delgadillo as "Miriam Gonzalez," but for consistency with the complaint, this order will continue to refer to her as defendant Delgadillo.

specialist, Rogers was HUSD chief financial officer, and Watson was HUSD director of special education. TAC, ¶¶ 17, 18, 20, 22. Defendant Bell Transit is a transportation company that provided transportation services to HUSD from at least 2011 through 2016. TAC, ¶ 15.

The operative third amended complaint was filed on April 6, 2021. See Dkt. 113. Prior to the TAC being filed, the court issued an order granting in part and denying in part defendants' motions to dismiss the second amended complaint, and allowing Fallon to file an amended complaint as to the dismissed claims, largely "out of an abundance of caution." See Dkt. 109 at 12, 14, 17.

The court's previous dismissal order set forth the underlying factual allegations. The court explained that the false claim allegations fell into three categories: (1) inflating the number of special needs students in need of individual student transportation, (2) splitting transportation bids to avoid the $45,000 threshold for requiring school board approval and competitive bidding, and (3) failing to disclose a conflict of interest. See Dkt. 109 at 2. The court concluded that Fallon had sufficiently stated a claim as to (1), but not as to (2) or (3).

The now-operative third amended complaint reasserts the allegations of categories (1) and (2), but also adds a new category (3).

As to category (1), Fallon alleges that a school district typically uses individual student transportation (also referred to as "taxi transportation") for approximately 15 students out of every 100,000 students. TAC, ¶ 46. However, when Fallon started working at HUSD, he observed that a "disproportionate and suspicious number" of students were being transported by taxi. TAC, ¶ 48. Taxi transportation accounted for 42% of HUSD's transportation budget for the 2015-16 school year. Id. Fallon complained about the problem, and the next year, the number of taxi-transported students fell from 149 to 13. TAC, ¶ 49. In the five years preceding Fallon's complaint, the number of taxi-transported students had never been below 135. TAC, ¶ 50. Fallon alleges that his complaint revealed that over 90% of the students receiving individual

transportation did not actually need it.  TAC, ¶ 49.  As mentioned above, the court previously concluded that Fallon had adequately stated a claim based on these allegations, as to defendants Wayne, Watson, and Delgadillo, but not Rogers.  See Dkt. 109 at 11-12.  The court will more fully discuss the specific allegations and claims against each defendant in the Discussion section of this order.

As to category (2), Fallon alleges that the special education taxi contracts were subject to school board approval and competitive bidding requirements if they exceeded $45,000.  TAC, ¶ 57.  Fallon alleges that the bid-splitting rendered the taxi contracts void, and that any claim for payment on those void contracts was false/fraudulent.  TAC, ¶¶ 58-59.  The court previously concluded that Fallon had not adequately stated a claim against any defendant as to the category (2)-related allegations, and granted defendants' motion to dismiss with leave to amend.  Dkt. 109 at 13.  The court will more fully discuss whether the amended allegations state a claim in the Discussion section of this order.

As to category (3), in the previous iteration of the complaint, Fallon alleged a conflict of interest between defendant Delgadillo and her son, alleged to be an employee of Bell Transit.  See Dkt. 109 at 13-14.  The court granted defendants' motion to dismiss as to these allegations, but permitted Fallon to amend "out of an abundance of caution."  Id. at 14.

In the now-operative complaint, Fallon no longer alleges a conflict of interest involving defendant Delgadillo.  Instead, the operative complaint alleges that Bell Transit was not licensed by the state Public Utilities Commission ("PUC") to transport special education students, thus rendering all of its transportation contracts fraudulent.  TAC, ¶¶ 68, 71.

Separate from the three categories of alleged false claims, Fallon also alleges employment retaliation.  Specifically, Fallon alleges that, as a result of reporting the alleged false claims, he was subjected to "severe harassment" including "multiple threats of termination of employment," and that his job was ultimately eliminated due to a pretextual "budget shortfall."  TAC, ¶ 77.  The court previously dismissed Fallon's

3

retaliation claims, with leave to amend, because Fallon did not allege any specific conduct by the individual defendants.  Dkt. 109 at 15-17.

Based on the above allegations, Fallon asserts six causes of action:

(1) Presentation of false claims in violation of the federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A), against all defendants,

(2) Making materially false records or statements in violation of the federal False Claims Act, 31 U.S.C. § 3729(a)(1)(B), against all defendants,

(3) Presentation of false claims in violation of the California False Claims Act, Cal. Gov't Code § 12651(a)(1), against all defendants,

(4) Making materially false records or statements in violation of the California False Claims Act, Cal. Gov't Code § 12651(a)(2), against all defendants,

(5) Retaliation in violation of 31 U.S.C. § 3730(h), against defendants Wayne, Rogers, and Watson, and

(6) Retaliation in violation of Cal. Labor Code § 1102.5, against defendants Wayne, Rogers, and Watson.

The HUSD defendants and Bell Transit have both filed motions to dismiss the TAC in its entirety, without leave to amend.

## DISCUSSION

A.  **Legal standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555, 558–59 (2007) (citations and quotations omitted).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" Id. at 679.  Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment.  Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Because at least some of plaintiff's claims sound in fraud, the complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake.  To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).  The court may consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced extensively in the complaint and documents that form the basis of a the plaintiff's claims.  See No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. Sparling, 411 F.3d at 1013.

**B.   Legal Analysis**

    **1.   The HUSD defendants' motion to dismiss**

        **a.   False Claim Act-related claims**

The HUSD defendants argue that all of Fallon's allegations related to the False Claims Act fail to meet the pleading standards of Rule 9(b). See Dkt. 114 at 13-14. The HUSD defendants argue that, even as to category (1) of the complaint's allegations, the pleading standard is not met. Id. at 14-16.

However, in the court's previous order, it already set out the relevant pleading standard under Rule 9(b), including the specific Ninth Circuit case law that "spell[s] out the level of detail needed to withstand a Rule 9(b) challenge in a false claims case," and found that Fallon's allegations did meet that standard as to category (1) of the complaint's allegations. See Dkt. 109 at 8-12 (citing Ebeid ex rel. U.S. v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)). As discussed above, the court previously concluded that Fallon had stated a claim as to defendants Wayne, Delgadillo, and Watson, but not as to Rogers, on the category (1)-related allegations.

Specifically, the court cited the complaint's allegations that "[s]pecial education taxi contracts were handled by defendants Watson and Delgadillo," and Fallon also alleges that "Delgadillo was the HUSD employee responsible for designating HUSD special education students as eligible for taxi service." TAC, ¶ 53. As to Wayne, the court noted the complaint's allegations that Wayne presented documents to the school board that "substantially overstated the number of students" receiving taxi transportation, and concluded that Fallon had adequately alleged the "particular details of a scheme" to submit false claims along with "reliable indicia that lead to a strong inference" that the claims were actually submitted, and that defendant Wayne's inflation of numbers was alleged to be part of the same scheme as Watson and Delgadillo's alleged inflation of numbers. See Dkt. 109 at 12.

6

The HUSD defendants now argue that, even if the above allegations show falsity, they do not meet the other elements of a False Claim Act cause of action because they do not show that a false claim was actually presented, or that the falsity was material in the government's decision to pay the claim. The first argument is directly contradicted by the Ninth Circuit's guidance in Ebeid, which explained that a plaintiff need not necessarily identify representative examples of false claims to support every allegation, but rather that it is sufficient to allege particular details of a scheme, combined with reliable indicia that lead to a strong inference that claims were actually submitted. See Dkt. 109 at 10 (citing Ebeid, 616 F.3d at 998-99). As explained above, Fallon was an employee of HUSD with firsthand knowledge of its operations, and, importantly, he alleges that after he complained about the number of students receiving taxi transportation, the number dropped by over 90%. See TAC, ¶ 49. That sequence of events not only serves as reliable indicia supporting the inference that claims were actually submitted, but also supports the inference that the number of students needing transportation was a material part of the government's decision to pay the claim. Accordingly, as it held in its previous order, Fallon has adequately stated a claim under the False Claims Act as to defendants Wayne, Delgadillo, and Watson on the category (1)-related allegations.

However, as to Rogers, the court previously held that "the complaint does not allege that defendant Rogers was involved in any alleged number-inflation." Dkt. 109 at 12. Fallon has not amended his complaint to allege any involvement by Rogers in the category (1)-related allegations, so defendants' motion to dismiss is GRANTED as to Rogers on the False Claim Act-related causes of action, and no further leave to amend shall be granted.

Category (2) covers the allegations that the HUSD defendants split bids to avoid the $45,000 threshold for requiring school board approval and competitive bidding. See TAC, ¶¶ 53-67. The court previously noted that Fallon had cited a 1942 California Supreme Court case holding that municipal contracts approved without the required competitive bidding process are "void," but ultimately concluded that "Fallon does not

connect the dots and provide examples of courts applying [the 1942 case] to the context of the False Claims Act." Dkt. 109 at 13. Accordingly, the court dismissed the category (2)-related allegations, but permitted Fallon to amend.

In the operative complaint, Fallon largely repeats the allegations of the previous complaint, but adds a footnote stating that he is "keenly mindful" of the court's observation that he did not "connect the dots," but that he is "uncertain whether the court wishes the citation of such authorities to be made within this third amended complaint or, instead, wishes that issue to be addressed in a subsequent motion to dismiss." TAC at 9, n.1. That distinction is now moot, because the court has considered both the third amended complaint and the opposition to the HUSD defendants' motion to dismiss, and concludes that Fallon still does not connect the dots and provide examples of courts applying his cited authority to the context of the federal or state False Claim Act. In fact, Fallon's opposition does not address the category (2)-related allegations at all. See Dkt. 119. Thus, having failed to correct the deficiencies of the previously-dismissed complaint, the HUSD defendants' motion to dismiss is GRANTED, without leave to amend, as to all HUSD defendants on all claims arising out of category (2)'s allegations.

Category (3) of the operative complaint alleges that Bell Transit was not licensed by the state Public Utilities Commission ("PUC") to transport special education students, thus rendering all of its transportation contracts fraudulent. TAC, ¶ 68, 71. As mentioned above, these allegations were not present in the previous version of the complaint. The HUSD defendants argue that Fallon has had multiple previous opportunities to include these allegations, and provides no justification for his delay. Dkt. 114 at 19. The court agrees, and GRANTS the HUSD defendants' motion to dismiss, without leave to amend, as to all HUSD defendants on all claims arising out of category (3)'s allegations.

### b. Retaliation claims

The next issue is the viability of Fallon's retaliation claims against the individual HUSD defendants. The operative complaint asserts a both a federal and a state retaliation claim against defendants Wayne, Rogers, and Watson.

As an initial matter, the court notes that Fallon's opposition brief appears to proceed as if the district itself is a defendant on the retaliation claims. In its previous order, the court concluded that Fallon had "waived any opposition" to the argument that the school district is immune from liability on retaliation claims. Dkt. 109 at 16. Fallon's brief now argues in a footnote that he "intended to concede immunity only for claims under the federal and California False Claims Act" and he maintains that "the school district is not immune under a state law claim for retaliation." Dkt. 119 at 2, n.1. Later in the brief, Fallon argues that the school district is "not immune from claims of employment retaliation under both the federal and state retaliation" laws. Id. at 5-7.

There are multiple problems with Fallon's argument as to the school district. First, and most importantly, Fallon did fail to respond to this argument in response to defendants' previous motion to dismiss, which is why the court held that Fallon had "waived any opposition to the argument." Dkt. 109 at 15-16; see also Dkt. 97. The court also notes that Fallon did not file a motion for reconsideration in response to the court's order. Moreover, the court notes that the third amended complaint does not name the district as a defendant on either retaliation claim. See TAC, ¶¶ 99 (federal retaliation claim, asserted against only Wayne, Rogers, and Watson), 100 (state retaliation claim, asserted against only Wayne, Rogers, and Watson). Nor is the district listed as a defendant in the case caption of the complaint. Accordingly, the court will not consider any argument as to retaliation claims purportedly asserted against the school district.

A second threshold matter is raised by Fallon's state-law retaliation claim under Cal. Labor Code § 1102.5. In its previous order, the court noted that other courts have been unwilling to apply section 1102.5 to individual employee-defendants, even though the statute was amended in 2014 to allow liability against "any person acting on behalf of an employer." See Dkt. 109 at 16-17; see also Minor v. FedEx Office & Print Services, 182 F.Supp.3d 966, 990 (N.D. Cal. 2016) ("the court declines to determine whether individual liability is available under § 1102.5."); see also United States ex rel. Lupo v. Quality Assurance Services, Inc., 242 F.Supp.3d 1020, 1030 (S.D. Cal. 2017) ("the court

concludes that if the California Supreme Court were ever to consider the issue, it would hold that there can be no individual liability under section 1102.5.").

While the court did allow Fallon leave to amend the state-law claim "out of an abundance of caution," it is still not persuaded that section 1102.5 should be applied to individual employee-defendants. Important in the court's consideration is the fact that there is no controlling Ninth Circuit authority on the issue. While Fallon argues that the HUSD defendants have waived this argument by not raising it while this case was pending in state court, the HUSD defendants' reply points out that the state court complaint named only the district as a defendant, not any individual HUSD defendants. Thus, because the individual HUSD defendants were not parties to the case in state court, they could not have waived their defense to the section 1102.5 claim. Accordingly, the HUSD defendants' motion to dismiss the state-law retaliation claim against defendants Wayne, Rogers, and Watson is GRANTED without leave to amend.

As to the federal retaliation claim, the HUSD defendants set forth the three elements: (1) the employee engaged in protected activity, (2) the employer knew that the employee was engaging in protected activity, and (3) the employer discriminated against the employee because of the protected activity. Dkt. 114 at 21 (citing U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir. 1996). In the context of the False Claims Act, protected activity consists of "investigating matters which are calculated, or reasonably could lead, to a viable FCA action." Id.

As to element (1), the HUSD defendants argue that Fallon "has not claimed that he was engaged in the furtherance of an action under the FCA" because he "was not investigating a known presentment of a claim to the government that was fraudulent or false." Dkt. 114 at 22. In other words, the HUSD defendants argue that, because Fallon fails to state a claim under the FCA, he cannot state a claim for retaliation. However, as discussed above, the court has concluded that Fallon has stated a claim as to a subset of his FCA-related allegations. Thus, Fallon has adequately alleged element (1) of a federal retaliation claim under the FCA.

As to element (2), the HUSD defendants argue that Fallon does not allege that they had knowledge of the protected activity. However, the complaint does specifically allege that Wayne, Rogers, and Watson each acted "in direct retaliation for and motivated by him having investigated and exposed the corruption, fraud, and illegal conduct he had discovered and reported." TAC, ¶ 77. The court finds these allegations sufficient to allege element (2) of a federal FCA retaliation claim.

As to element (3), the Ninth Circuit has held that "discrimination" for purposes of a FCA retaliation claim must be "sufficient to constitute an adverse employment action." Moore v. California Institute of Technology Jet Propulsion Laboratory, 275 F.3d 838, 848 (9th Cir. 2002). Accordingly, Fallon must allege that each HUSD defendant's conduct was "reasonably likely to deter employees from engaging in activity protected" by the FCA. Id.

The court will consider the allegations against each defendant separately. As to defendant Wayne, Fallon alleges that Wayne made "false accusations" against him, "put him on involuntary leave prior to a termination of employment," and ultimately "reorganized" Fallon's department, and no others, "so that all his managers were terminated, falsely claiming a budget shortfall." TAC, ¶¶ 78-81.

As to defendant Watson, Fallon alleges that she "wrote threatening emails" to his superior "containing false accusations of dishonesty and job performance issues," and provided his "personal telephone number to angry executives at Bell Transit, knowing they would (and, in fact, did) harass [him] with telephone calls when the district reduced ridership in mid-2016 due to [his] discovery and reporting." TAC, ¶ 82.

As to defendant Rogers, Fallon alleges that she refused to approve dozens of purchase orders, "effectively shutting down [Fallon's] department and impeding [his] ability to perform his job," imposed "crippling 'new rules'" that further impeded Fallon's ability to perform his job, sent him 400 emails "implicitly threatening" his termination, and told Fallon "not to dwell on the taxi stuff" and to "move forward," which he "reasonably perceived and understood this conversation to be an ultimatum and threat that, if he did

not stop complaining about the illegality of the Bell Transit contracts, he would lose his job." TAC, ¶ 83-84.

Fallon further alleges that all of the alleged conduct constituted the "involuntary constructive termination" of his employment. TAC, ¶ 85.

The HUSD defendants argue that the individual defendants' conduct did not rise to the level of an adverse employment action. However, the HUSD defendants make this argument only in the context of Fallon's state-law retaliation claim, not his federal-law retaliation claim. The court observes that the California Supreme Court has adopted a test for assessing an "adverse action" that differs from the test adopted by the Ninth Circuit. Specifically, the California Supreme Court requires an adverse action under section 1102.5 to be one that "materially affects the terms, conditions, or privileges of employment," while the Ninth Circuit has held that an adverse action under 31 U.S.C. § 3730(h) need be "reasonably likely to deter employees from engaging in activity protected" by the FCA. See Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1052 (2005); Moore, 275 at 848.

Because, as discussed above, the court has dismissed Fallon's state-law claim under section 1102.5, it will consider only the Ninth Circuit's standard in Moore applicable to federal FCA retaliation claims. And under that standard, the court concludes that the conduct alleged by Wayne, Watson, and Rogers was "reasonably likely to deter employees from engaging in activity protected" by the FCA. Specifically, Wayne is alleged to have "reorganized" Fallon's department as a pretext to eliminate his job, and, if true, that conduct would be reasonably likely to deter employees from reporting potential FCA violations. Watson is alleged to have falsely characterized Fallon's job performance and to have caused Bell Transit executives to make harassing phone calls, and, if true, that conduct would be reasonably likely to deter employees from reporting potential FCA violations. Finally, Rogers is alleged to have sent Fallon 400 emails that implicitly threatened his termination, and, if true, that conduct would be reasonably likely to deter employees from reporting potential FCA violations

Finally, while the HUSD defendants argue that there is no causal link between Fallon's complaints and the alleged retaliation, that argument is dependent on defendants' previous argument that they were not aware of any protected activity. Because the court has already concluded that Fallon has adequately alleged the HUSD defendants' awareness of the protected activity, this argument must be rejected.

### 2. Bell Transit's motion to dismiss

In its previous order, the court dismissed all claims against Bell Transit after finding that the complaint's allegations "do not make clear how Bell Transit was involved in the actual presentation of a false claim (or any related false records/statements)." Dkt. 109 at 18. The court did allow Fallon an opportunity to amend his allegations against Bell Transit, in order to "allege[] facts showing that Bell Transit was involved in either presenting a false claim, or causing a false claim to be presented, or causing a false record to be made or used." Id.

Fallon's third amended complaint does not cure the deficiencies of the previous complaint. In fact, Fallon does not add any new substantive allegations regarding Bell Transit's involvement in the number-inflation scheme alleged as part of the category (1) allegations, or the bid-splitting allegations of category (2). To the extent the TAC adds new allegations against Bell Transit, they largely relate to the entirely new theory that Bell Transit was not properly licensed by the state PUC, i.e., category (3), described above. And as discussed above, Fallon did not seek leave to add the new licensing-related allegations, so they are dismissed and will not be considered as part of this motion. While Fallon argues in his opposition that "the licensing issue is not a new claim but is in further support for a claim of violation of the False Claims Act which has been pending since the filing of this action in 2016," the fact remains that the allegations related to Bell Transit's alleged lack of PUC licensing were not in any previous version of the complaint in this action. The fact that the action has been pending since 2016 only underscores the length of Fallon's delay in asserting these new allegations. Accordingly, Bell Transit's motion to dismiss is GRANTED as to the category (3) allegations, without leave to

amend.

Moving to the other categories of allegations, the court has already concluded that the category (2) allegations do not state a claim against the HUSD defendants, and it also concludes that the category (2) allegations do not state a claim against Bell Transit, for the same reason. Specifically, Fallon fails to identify any authority for applying his cited California Supreme Court case to the False Claims Act context, and Bell Transit's motion to dismiss is GRANTED as to the category (2) allegations, without leave to amend.

As to the category (1) allegations, Fallon simply fails to identify any role that Bell Transit allegedly played in the presentation of false claims. As stated above, the third amended complaint does not add any new allegations regarding this category of conduct beyond those in the second amended complaint, which this court has already found to be insufficient. In his opposition brief, Fallon offers only the following boilerplate regarding Bell Transit's role: "[i]t cannot be rationally disputed that Bell was inextricably intertwined with employees of the school district in creating, planning and implementing a fraudulent scheme centered on the use of its taxicabs to transport disabled students." Dkt. 119 at 10. This is exactly the type of legally conclusory statement, unsupported by any factual allegations, that need not be accepted under Iqbal. Accordingly, Bell Transit's motion to dismiss is GRANTED as to the category (1) allegations. Because Fallon has already amended his complaint multiple times, no further leave to amend will be granted.

**CONCLUSION**

For the foregoing reasons, the court rules as follows.

As to the HUSD defendants, the motion to dismiss is GRANTED in part and DENIED in part. Specifically, the HUSD defendants' motion to dismiss is DENIED as to defendants Wayne, Delgadillo, and Watson on the first, second, third, and fourth causes of action, to the extent those causes of action are based on the allegation that defendants inflated the number of students needing individual transportation. The HUSD defendants' motion to dismiss is GRANTED, without leave to amend, as to all individual defendants

on the remaining portions (i.e., the bid-splitting allegations and the conflict-of-interest allegations) of the first, second, third, and fourth causes of action.  The HUSD defendants' motion to dismiss is also GRANTED as to defendant Rogers on the entirety of the first, second, third, and fourth causes of action, without leave to amend.

The HUSD defendants' motion to dismiss is DENIED as to the fifth cause of action (FCA retaliation) asserted against Wayne, Watson, and Rogers.  The HUSD defendants' motion to dismiss is GRANTED, without leave to amend, as to all individual defendants on the sixth cause of action for retaliation under state law.

Bell Transit's motion to dismiss is GRANTED in its entirety, without leave to amend.

Thus, only these claims and parties remain:

(1) Presentation of false claims in violation of the federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A), only as to the category (1)-related allegations, against defendants Wayne, Delgadillo, and Watson,

(2) Making materially false records or statements in violation of the federal False Claims Act, 31 U.S.C. § 3729(a)(1)(B), only as to the category (1)-related allegations, against defendants Wayne, Delgadillo, and Watson,

(3) Presentation of false claims in violation of the California False Claims Act, Cal. Gov't Code § 12651(a)(1), only as to the category (1)-related allegations, against defendants Wayne, Delgadillo, and Watson,

(4) Making materially false records or statements in violation of the California False Claims Act, Cal. Gov't Code § 12651(a)(2), only as to the category (1)-related allegations, against defendants Wayne, Delgadillo, and Watson, and

(5) Retaliation in violation of 31 U.S.C. § 3730(h), against defendants Wayne, Watson, and Rogers.

The court sets a case management conference for **September 16, 2021**, at 2:00 p.m.

**IT IS SO ORDERED.**

Dated:  August 18, 2021

                                       /s/ *Phyllis J. Hamilton*
                                 PHYLLIS J. HAMILTON
                                 United States District Judge