1  Richard M. Jacobson, Esq. – SBN 114520
   Joseph T. Urbanic, Esq. – SBN 302094
2  **JACOBSON MARKHAM, L.L.P.**
   8950 Cal Center Drive, Suite 210
3  Sacramento, CA 95826
   Tel:  916.854.5969
4  Fax:  916.854.5965
   Email:  rmjacobson@jacobsonmarkham.com
5  Email:  jurbanic@jacobsonmarkham.com

6  Attorneys for Defendants
   MATTHEW WAYNE, MIRIAM DELGADILLO,
7  LUCI ROGERS, and TAMMY WATSON

8                **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11  UNITED STATES OF AMERICA, *ex rel.*           )   No. 16-cv-06994-PJH
    STEVEN FALLON and on behalf of the            )
12  STATE OF CALIFORNIA,                          )   **TRIAL BRIEF OF DEFENDANTS**
                                                  )   **MATTHEW WAYNE, MIRIAM**
13             Plaintiffs-Relators,               )   **DELGADILLO, LUCI ROGERS AND**
                                                  )   **TAMMY WATSON**
14        vs.                                     )
                                                  )   _____
15  BELL TRANSIT CORPORATION; et al.,             )   **Trial Date:  March 6, 2023**
                                                  )   **Time:  8:30 a.m.**
16             Defendants.                        )   **Dept:  Oakland Courthouse, Ctrm 3, 3rd Fl**
    _____     /   **Action Filed: December 6, 2016**
17

18        Defendants Matthew Wayne, Miriam Delgadillo, Luci Rogers, and Tammy Watson

19  (collectively, "Defendants"), submit the following trial brief in the above-entitled civil action,

20  adverse to Plaintiffs United States of America, ex rel. Steven Fallon and on behalf of the State of

21  California, ("Plaintiffs").

22              **INTRODUCTION AND SUMMARY OF THE CASE FOR THE DEFENSE**

23        This case arises out of allegations made by Steven Fallon ("Relator"), a former employee of

24  Hayward Unified School District (hereinafter "HUSD" or the "District").  Relator was employed by

25  HUSD from 2014 until he resigned in 2017, managing the Facilities, Custodial, and Regular

26  Education Transportation departments.  His position had no involvement in Special Education or

27  Special Education Transportation, which were entirely managed by HUSD's Special Education

28  Department.

TRIAL BRIEF OF DEFENDANTS MATTHEW WAYNE, MIRIAM DELGADILLO,
LUCI ROGERS AND TAMMY WATSON - 16-cv-06994-PJH

1    During Relator's time at the District, he purports to have uncovered some nebulous scheme,

2    the crux of which, he alleges, was to arrange for individual transportation of an unnecessarily high

3    number of special education students by certain transportation providers, in violation of the law and

4    for personal financial kickbacks.  Apparently discovering that he could not prove the existence of a

5    kickback scheme, he now relies upon some esoteric theory to attempt to state his false claims case.

6    However, the evidence will show that there was no scheme, and evidence regarding the placement

7    of individual students in various forms of transportation was actually the product of business

8    conditions and limitations of the primary transportation provider.

9    **PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

10   **I.    PROCEDURAL HISTORY**

11   Plaintiffs filed the present lawsuit under seal on December 6, 2016.  A First Amended

12   Complaint was filed under seal on June 21, 2019.  A Second Amended Complaint was filed on

13   August 24, 2020.  A Third Amended Complaint ("TAC") was filed on April 6, 2021, which remains

14   the operative complaint.  This court dismissed many of the claims alleged in the prior pleadings and

15   completely dismissed defendants' employer HUSD.  In its order granting in part and denying in part

16   defendants' Motion to Dismiss the Second Amended Complaint [Doc. 109] the Court denied

17   defendants' request to dismiss these individual defendants from the false claims causes of action

18   since they were named solely in their individual capacities. The Court cited *Stoner v. Santa Clara*

19   *Office of Educ.,* 502 F.3d 1116 (9th Cir. 2007).

20   > "[S]tate employees sued in their individual capacities are persons who may be
21   > subject to liability for submitting a false claim to the United States." 502 F.3d at
     > 1124. As mentioned above, the SAC specifies that the individual HUSD
22   > defendants are being sued in *their individual, not official, capacities.* And because
     > the California FCA is "patterned after" the federal FCA, defendants *acting outside*
23   > *the scope of their employment* would not be immune under either law. Wells, 39
     > Cal.4th at 1187."

24   Doc. 109 at 7-8. (emphasis added)

25   In other words, the only reason defendants Wayne, Watson and Delgadillo are even

26   answering to false claims allegations is because they have been named in their *individual capacities.*

27   But, as the Court rightly pointed out, if they were acting within the scope of their employment when

28   the alleged wrongdoing occurred, they would be immune from FCA liability just like their employer

1    HUSD.  The undisputed evidence in this case will show that any alleged violations of the CFCA by

2    the individual defendants occurred within the scope of their employment with HUSD.

3         Within the TAC, Plaintiffs alleged six causes of action: 1) Presentation of False claims under

4    the Federal False Claims Act; 2) False Records and Statements under the Federal False Claims Act;

5    3) Presentation of False Claims under the California False Claims Act; 4) False Records and

6    Statements under the California False Claims Act; 5) Unlawful Employment Retaliation under the

7    Federal False Claims Act; and 6) Unlawful Employment Retaliation under the California

8    Whistleblower Act.  On April 20, 2021, Defendants filed a Motion to Dismiss the Third Amended

9    Complaint.  The Motion was granted in part and denied in part.  As of August 18, 2021, the

10   following claims and parties remain: 1) presentation of false claims in violation of the Federal False

11   Claims Act, against Defendants Wayne, Delgadillo, and Watson; 2) Making materially false records

12   or statements in violation of the Federal False Claims Act, against Defendants Wayne, Delgadillo,

13   and Watson; 3) Presentation of false claims in violation of the California False Claims Act, against

14   Defendants Wayne, Delgadillo, and Watson; 4) Making materially false records or statements in

15   violation of the California False Claims Act, against Defendants Wayne, Delgadillo, and Watson;

16   and 5) Retaliation in violation of 31 U.S.C. § 3730(h), against Defendants Wayne, Watson, and

17   Rogers.

18        On August 25, 2022, Defendants filed a Motion for Partial Summary Judgment as to only the

19   first and second causes of action under the federal False Claims Act, which was unopposed and

20   granted.  Therefore, the only causes of action that remain are as follows: 1) Presentation of false

21   claims in violation of the California False Claims Act, against Defendants Wayne, Delgadillo, and

22   Watson; 2) Making materially false records or statements in violation of the California False Claims

23   Act, against Defendants Wayne, Delgadillo, and Watson; and 3) Retaliation in violation of 31

24   U.S.C. § 3730(h), against Defendants Wayne, Watson, and Rogers.  These first two causes of action

25   are only related to "Category 1" of the alleged false claims, which is inflating the number of special

26   needs students in need of individual student transportation.

27   / /

28   / / /

Jacobson Markham
Sacramento, California

TRIAL BRIEF OF DEFENDANTS MATTHEW WAYNE, MIRIAM DELGADILLO,
LUCI ROGERS AND TAMMY WATSON - 16-cv-06994-PJH

1   **2. FACTUAL BACKGROUND**

2   Defendants in this case are Matthew Wayne, Miriam Delgadillo, Luci Rogers, and Tammy

3   Watson.   Dr. Wayne was the Assistant Superintendent of Educational Services and Interim

4   Superintendent at HUSD when Relator was employed there.  Ms. Watson was the Special Education

5   Director of HUSD.  Ms. Delgadillo was an Office Specialist who was supervised by Ms. Watson.

6   Ms. Rogers was the Chief Financial Officer of HUSD.

7   Many of the claims and allegations made in Relator's Third Amended Complaint have

8   become irrelevant as this Court has struck various arguments down during the pleading motion

9   process.  The only allegations that still must be addressed are those related to inflating the number

10   of special education students who were put in individual transportation, and retaliation under the

11   Federal False Claims Act.  Relator's argument as to the inflation of the number of special education

12   students on individual transportation, generally, is as follows.  He claims that the need for and

13   means of transportation for special education students is dictated by the individual student's

14   Individualized Education Program ("IEP").  Third Amended Complaint, ¶ 44 ("TAC").  Relator

15   goes on to claim that "[v]ery few of the HUSD special education students who had IEPs requiring

16   transportation, had IEPs that required transportation by taxi or another specialized vehicle."  TAC, ¶

17   45. He then argues that after he complained about this "problem . . . [t]he following school year, the

18   number of special education students being individually transported by HUSD daily fell from 149 to

19   13."  TAC, ¶ 49.  To Defendants' knowledge, this reduction in the number of special education

20   students using individual transportation is the main piece of evidence that Relator will present that

21   would support his California False Claims Act allegations.

22   There is a simple explanation for this reduction in special education students using

23   individual transportation.   Defendants will show that, prior to 2016, HUSD was part of a

24   transportation consortium along with many other school districts, called South County

25   Transportation Group.  Durham Transportation was the company that the consortium contracted

26   with to transport special education students.  Durham's Director of Business Development, Mark

27   Herington, has admitted that Durham was providing inadequate service to HUSD prior to the 2016-

28   2017 school year.  There was a driver shortage and Durham could not cover all of the students

TRIAL BRIEF OF DEFENDANTS MATTHEW WAYNE, MIRIAM DELGADILLO,
LUCI ROGERS AND TAMMY WATSON - 16-cv-06994-PJH

1   within the consortium that they were being asked to transport, including numerous students from

2   HUSD.  There were other factors, besides the shortage of drivers available to Durham, that made

3   individual transportation necessary at times.  Some special education students needed to be

4   transported far outside of the District to go to specialized programs, including as far away as San

5   Francisco and California's Central Valley.  Some other students had psychological or mental

6   problems that required them to be transported individually for everyone's safety, or medical issues

7   that required them to be transported in ambulance-like vehicles.

8   All of these factors resulted in HUSD being forced to use other providers since, by law,

9   HUSD has to transport every special needs student who needs transportation.  34 C.F.R. § 300.34.

10  Furthermore, school funding in California is based on average daily attendance, so if students were

11  not getting to school, the District's funding would be cut.  See generally, Cal. Educ. Code § 46300.

12  Therefore, it was essential that students be transported by any means necessary, even if that required

13  using individual transportation.  In 2015, the consortium contract was coming to an end.  Since the

14  District had concerns about the quality of Durham's services, it pulled out of the consortium.  The

15  District then sought a new transportation contract.  Durham was the sole bidder for the contract, and

16  it was awarded the contract.

17  Under the new contract, Defendants will show that Durham's responsibilities were vastly

18  reduced compared to its contract with South County Transportation Group.  With South County

19  Transportation Group, Durham had been responsible for close to 140 routes per day.  However, after

20  the contract with South County Transportation Group ended, Durham focused all of its attention on

21  HUSD and was only responsible for approximately 90 routes per day, which meant that far fewer

22  students needed to be transported individually.  Durham had the capacity to transport almost all of

23  the students by yellow bus after the new contract was implemented.  Therefore, the reason for the

24  sharp decline in individually transported special education students that Relator is focused on was

25  not due to malfeasance.  Rather, it was simply a matter of Durham being overextended and short of

26  bus drivers under its contract with South County Transportation Group, and then that problem being

27  abruptly solved by a new contract with HUSD being implemented.

28  / / /

Jacobson Markham
Sacramento, California

TRIAL BRIEF OF DEFENDANTS MATTHEW WAYNE, MIRIAM DELGADILLO,
LUCI ROGERS AND TAMMY WATSON - 16-cv-06994-PJH

1    The only other claim available to Relator at this point is that he was subject to employment

2  retaliation under the Federal False Claims Act.  After reporting the alleged fraud, discussed above,

3  Relator claims to have undergone harassment.  TAC, ¶ 77.  This alleged harassment included Dr.

4  Wayne, putting him on "involuntary leave"; "berating" him; and reorganizing Relator's department.

5  TAC ¶¶ 78-81.  Ms. Watson is alleged to have written threatening emails and provided Relator's

6  phone number to executives at Bell Transit.  Ms. Rogers is alleged to have directed the Purchasing

7  Department to not approve purchase orders from Relator's department; instituted "crippling 'new

8  rules'"; sent 400 emails to Relator; and told Relator "not to dwell on the taxi stuff."  TAC ¶¶ 83-4.

9  Defendants' evidence will show that Relator resigned by choice in 2017, long after these incidents

10  are alleged to have occurred, and after conducting a job search and accepting a new position while

11  still employed with and being paid by HUSD.  Defendants' evidence will show that none of this

12  alleged conduct constituted employment retaliation, and the Relator left his position of his own

13  accord.  Moreover, he was in a new position instantly, meaning that there are no damages associated

14  with his retaliation claim.

15    Defendants made their required initial disclosure.  Plaintiffs made no initial disclosure.

16  Defendants deposed Chris Essman of the California Department of Education.  Plaintiffs deposed

17  Allan Garde and Julia Valdez of the Hayward Unified School District.  Relator disclosed no experts.

18  Defendants disclosed two experts.  Relator conducted no expert discovery in this case.

19  ## THE CASE FOR THE DEFENSE

20  **I.    PRESENTATION OF FALSE CLAIMS UNDER CALIFORNIA FALSE CLAIMS**

21  **ACT (CAL. GOV. CODE § 12651(a)(1).)**

22    A. Legal Standard

23    California's False Claims Act makes it illegal for any person to "[k]nowingly present[] or

24  cause[] to be presented a false or fraudulent claim for payment or approval." Cal. Gov. Code

25  §12651(a)(1).  A claim is defined as "any request or demand, whether under a contract or otherwise,

26  for money, property, or services, and whether or not the state or a political subdivision has title to

27  the money, property, or services that meets either of the following conditions: A) Is presented to an

28  officer, employee, or agent of the state or of a political subdivision. B) Is made to a contractor,

Jacobson Markham
Sacramento, California

TRIAL BRIEF OF DEFENDANTS MATTHEW WAYNE, MIRIAM DELGADILLO,
LUCI ROGERS AND TAMMY WATSON - 16-cv-06994-PJH

1   grantee, or other recipient, if the money, property, or service is to be spent or used on a state or any

2   political subdivision's behalf or to advance a state or political subdivision's program or interest, and

3   if the state or political subdivision meets either of the following conditions: i) Provides or has

4   provided any portion of the money, property, or service requested or demanded. ii) Reimburses the

5   contractor, grantee, or other recipient for any portion of the money, property, or service that is

6   requested or demanded." Cal. Gov. Code 12650(b)(1).

7          The Judicial Council of California's Civil Jury Instructions lay out the following essential

8   factual elements that must be proven to establish this cause of action: 1) that Defendant(s)

9   **knowingly** presented or caused to be presented a false or fraudulent claim to [name of public entity]

10  for payment or approval; 2) that the claim was false or fraudulent for some specific reason; and 3)

11  that Defendant(s)' false or fraudulent claim was **material** to [name of public entity's] decision to

12  pay out money to Defendant(s).  (CACI 4800.) California's Government Code defines "knowingly"

13  as follows: with respect to information about the claim, Defendants 1) had actual knowledge that the

14  information was false; or 2) acted in deliberate ignorance of the truth or falsity of the information; or

15  3) acted in reckless disregard of the truth or falsity of the information.  Cal. Gov. Code 12650(b)(3).

16  "Material" means that the claim had a natural tendency to influence, or was capable of influencing,

17  the payment or receipt of money, property, or services on the claim.  Cal. Gov. Code 12650(b)(4).

18          It is important to note that, since California's False Claims Act is patterned on the federal

19  statute, "[t]he analysis is the same under both statutes." Hardin v. Mendocino Coast Dist. Hosp.,

20  2018 WL 2984834 (N.D. Cal.) (citing Kaye v. Bd. of Trustees of San Diego Cty. Pub. Law Library,

21  179 Cal.App.4th 48, 49-50 (Ct. App. 2009)). This means that "it is appropriate to look to precedent

22  construing the equivalent federal act." In re Bank of New York Mellon Corp. False Claims Act

23  Foreign Exchange Litigation, 851 F.Supp.2d 1190, 1195 (N.D. Cal. 2012).

24          B. These Defendants Did Not Submit Any "Claims," Because That's Not How School

25  Funding Works.

26          Obviously, for liability to attach under California's False Claims Act, Relator must prove

27  that these Defendants made a claim in the first place.  A claim is, in short, a request or demand for

28  money.  Cal. Gov. Code 12650(b)(1).  Money for special education transportation is provided to

Jacobson Markham
Sacramento, California

TRIAL BRIEF OF DEFENDANTS MATTHEW WAYNE, MIRIAM DELGADILLO,
LUCI ROGERS AND TAMMY WATSON - 16-cv-06994-PJH

1   school districts as part of their yearly budget.  A school district's yearly budget is based on a set of

2   objective factors that has nothing to do with the manner in which students are transported to school.

3   Demographic numbers and a limited amount of other information are provided to the state yearly,

4   and the school district's budget is determined from those objective factors.  The information that is

5   given to the state is audited at both the district and state level.  None of the information has anything

6   to do with how special education students are transported.  None of these Defendants ever made any

7   representations to the government about the number of, or manner in which special education

8   students were being transported to school, because that has no effect on how much money the state

9   will give the school district the next year, it was not part of their job, and it simply isn't done

10  because there is no reason to do it.  None of these Defendants told the government that they were in

11  compliance with a statute, regulation, or contract, and then the government paid money based on

12  that representation.  To allege that happened, is to misunderstand the way schools are funded in

13  California.  Therefore, there were not any claims in the first place, let alone false or fraudulent

14  claims.

15          C. Any Claims That Defendants Submitted Were Not False or Fraudulent

16          Defendants did not submit claims that were false or fraudulent.  In order for Defendants to

17  be liable under California's False Claims Act, Relator must prove that one of these Defendants

18  submitted claims that were actually false or fraudulent in some specific way.  Cal. Gov. Code §

19  12651(a)(1). Here, the evidence will show that none of the Defendants submitted any claims that

20  were false or fraudulent as to the number of special education students that needed individual

21  transportation.  As explained above, a higher number of special education students were being

22  transported individually prior to 2016 primarily because of business conditions at Durham that

23  resulted from its contract with the South County Transportation Group.  HUSD was forced to

24  transport a high number of students individually because HUSD was required by law to transport all

25  special needs students, and Durham did not have enough bus drivers available to cover all HUSD

26  special needs students.  This was confirmed by deposition testimony in September 2018. With

27  Durham being contractually obligated to run 140 routes per day without sufficient drivers to cover

28  these routes, HUSD had to fill the gap somehow to stay in compliance with the law, and HUSD did

Jacobson Markham
Sacramento, California

TRIAL BRIEF OF DEFENDANTS MATTHEW WAYNE, MIRIAM DELGADILLO,
LUCI ROGERS AND TAMMY WATSON - 16-cv-06994-PJH

1  that by arranging for students to be transported individually using other providers.  For Relator's

2  theory to be correct, there would have to have been some requirement that the District use Durham

3  exclusively for transportation, which there was not, or that Durham and HUSD's explanation of why

4  these students were transported individually was false, which also is inaccurate.

5          D. Even If Defendants Submitted False or Fraudulent Claims, They Did Not Do So

6  ***Knowingly.***

7          Assuming *arguendo* that some claim or claims, submitted by Defendants, were false or

8  fraudulent in some way, Defendants cannot be said to have acted in reckless disregard of the truth or

9  falsity of that information, let alone with deliberate ignorance or actual disregard of the truth.

10  Relator must show that Defendants had the intention of knowingly presenting information that they

11  knew to be false; mere negligence, innocent mistakes, and bad math do not constitute knowing

12  presentation of false or fraudulent claims.  U.S. v. Bourseau, 531 F.3d 1159, 1167 (9th. Cir. 2008).

13  Relator cannot show any evidence that would prove that.  Relator has not taken the depositions of

14  any of the defendants.  It is unclear how he intends to prove falsity or that they acted in reckless

15  disregard, deliberate ignorance, or actual disregard of the truth regarding special education

16  transportation at any point.

17          E. A Few Specific Factors are Material to the Government Paying Money to School

18  Districts, and None of Them Have Anything to Do With Transportation.

19          Relator must prove that these alleged false or fraudulent claims were material in the

20  government's decision to pay out money.  "[A] misrepresentation about compliance with a statutory,

21  regulatory, or contractual requirement must be material to the Government's payment decision in

22  order to be actionable under the False Claims Act."  United Health Services, Inc. v. U.S. ex rel.

23  Escobar, 579 U.S. 176, 192.  Materiality looks to the effect on the likely or actual behavior of the

24  recipient of the alleged misrepresentation.  *Id* at 193.  A misrepresentation is not material just

25  because the government would have the option to decline to pay if it knew of the defendant's

26  noncompliance.  *Id.* at 194.  Furthermore, materiality cannot be found where noncompliance is

27  minor or insubstantial. *Id.*

28  / / /

Jacobson Markham
Sacramento, California

TRIAL BRIEF OF DEFENDANTS MATTHEW WAYNE, MIRIAM DELGADILLO,
LUCI ROGERS AND TAMMY WATSON - 16-cv-06994-PJH

1    Relator will not be able to show that the government had, as a condition of payment, a

2    requirement that special education students must not be transported individually.  In fact, it is not

3    believed Relator has any witness who will be able to testify that the State's decision to fund

4    HUSD's special education program was in any way influenced by the manner of transportation.  In

5    that regard, Relator has not designated any expert witness on the subject despite the fact that the

6    arcane subject matter involved with special education funding is well beyond the common

7    experience of lay jurors.

8    Defendants will prove that budgets are determined through an objective formula that has

9    nothing to do with how special education students are transported.  Therefore the "materiality"

10   element will not be established.

11   **II.    MAKING  MATERIALLY  FALSE  RECORDS  OR  STATEMENTS  UNDER**

12   **CALIFORNIA FALSE CLAIMS ACT (CAL. GOV. CODE § 12651(a)(2).)**

13   A. Legal Standard

14   California's False Claims Act makes illegal a second category of conduct, when someone

15   "[k]nowingly makes, uses, or causes to be made or used a false record or statement material to a

16   false or fraudulent claim." Cal. Gov. Code § 12651(a)(2).  The Judicial Council of California's Civil

17   Jury instructions direct users to modify the first of the essential factual elements when a different

18   category of conduct is alleged under the California False Claims Act.  Thus, the essential factual

19   elements of this claim are as follows: 1) That Defendant(s) knowingly made, used, or caused to be

20   made or used a false record or statement material to a false or fraudulent claim; 2) That the claim

21   was false or fraudulent for some specific reason; 3) That Defendant(s)' false or fraudulent claim was

22   material to a public entity's decision to pay out money. (CACI 4800.) The definitions of

23   "knowingly" and "material" are given *supra*.

24   B. There Were No False Records Because There Were No False Claims.

25   To prove this element, Relator would have to prove that Defendants knowingly made, used,

26   or caused to be made or used a false record or statement material to a false or fraudulent claim.

27   Relator's argument is that Defendants inflated the number of special education students who were

28   being transported individually.  However, the number of students who were being transported

Jacobson Markham
Sacramento, California

TRIAL BRIEF OF DEFENDANTS MATTHEW WAYNE, MIRIAM DELGADILLO,
LUCI ROGERS AND TAMMY WATSON - 16-cv-06994-PJH

1   individually, as well as the sudden drop-off in the number of students has been explained above.

2   Therefore, without any other allegation to address under the California False Claims Act, there is

3   little more to say here.

4   **III.    RETALIATION UNDER FEDERAL FALSE CLAIMS ACT (31 U.S.C. 3730(h).)**

5        A. Legal Standard

6        Relator alleges that he was retaliated against under 31 U.S.C. 3730(h).  Under this statute,

7   Relator must prove the following: 1) that he engaged in activity protected under the statute; 2) that

8   "the employer knew the plaintiff engaged in a protected activity"; and 3) that "the employer

9   discriminated against the plaintiff "because he . . . engaged in protected activity." United States ex

10  rel. Campie v. Gilead Sciences, Inc., 862 F.3d 890, 907 (9th Cir. 2017).

11       B. Relator Did Not Engage in Protected Activity Because His Allegations Were

12  Unreasonable.

13       Relator did not engage in protected activity at any point in his employment with the District,

14  because his belief that a violation of the Federal False Claims Act had occurred was not reasonable.

15  To prove the first element of this cause of action, Relator would need to show that his belief that

16  there was fraud against the government was reasonable.  Mendiondo v. Centinela Hosp. Medical

17  Center, 521 F.3d 1097, 1104 (9th. Cir. 2008).  Every allegation that Relator has brought has turned

18  out to be completely unsupported by evidence, or the result of Relator misunderstanding or not

19  having enough information to evaluate a situation.  The evidence will show Relator had no way of

20  knowing what was going on in terms of special education transportation at HUSD, because it was

21  not his department.  These are the reasons why so many of his claims have been dispensed with

22  already, and he is left with only very few at this point in the litigation.  While the rights of those

23  engaging in protected activity should be paramount under the law, Relator never had any actual

24  evidence of wrongdoing, so a reasonable person would have been aware that they were not engaged

25  in protected activity.

26       C. Relator Did Not Suffer Any Adverse Employment Action.

27       Relator did not suffer any adverse employment action, which means that there was no

28  discrimination. "Behavior does not constitute retaliation under the False Claims Act unless it would

1    be sufficient to constitute an adverse employment action under Title VII." Moore v. California

2    Institute of Technology Jet Propulsion Laboratory, 275 F.3d 838, 847-48 (9th Cir. 2002). Adverse

3    employment action is conduct that is "reasonably likely to deter employees from engaging in"

4    protected activity and that has "a retaliatory motive." Ray v. Henderson, 217 F.3d 1234, 1243 (9th

5    Cir. 2000).  Some examples of this type of conduct are lateral transfers, unfavorable job references,

6    and changes in work schedules.  *Id*.  This test "does not cover every offensive utterance by co-

7    workers, because statements by co-workers do not reasonably deter employees from engaging in

8    protected activity." *Id.* Here, Relator seems to have alleged that every unpleasant thing he can recall

9    happening during his employment at HUSD was actually retaliation.  The reality is that Relator

10   continued working at HUSD long after he began investigating the alleged fraud; his pay was never

11   reduced; and he conducted a job search while employed at HUSD, and then went to that new job on

12   his own volition.

13        Relator's claim that Dr. Wayne retaliated against him does not make sense, because most of

14   the conduct took place before Dr. Wayne even knew that he was implicated in this alleged scheme.

15   As the evidence will show, Dr. Wayne's actions prior to early 2017 could not have had a retaliatory

16   motive, which is required for conduct to constitute retaliation, Ray, *supra,* 217 F.3d at 1243,

17   because Dr. Wayne did not learn that he was implicated in any alleged scheme until early 2017.

18   Furthermore, there is no evidence that Dr. Wayne's "berat[ing]" of Relator had anything to do with

19   Relator's investigation into the alleged scheme.  If Dr. Wayne's conduct would not reasonably deter

20   an employee from engaging in protected activity, then it did not constitute retaliation.  *Id*.  Relator

21   also alleges that the reorganization of his department was somehow retaliatory.  However, the

22   evidence will show this reorganization was done for financial reasons which transcended Relator's

23   employment.  It was presented to the Board for approval, and it saved HUSD hundreds of thousands

24   of dollars per year once it was implemented.  The reorganization covered several departments and

25   dozens of positions.  There is no evidence to support Relator's claim that this was done in retaliation

26   for his actions.

27        Relator also claims that Ms. Rogers retaliated against him by making the purchasing

28   department not cooperate with his department, sent him an excessive number of emails,

TRIAL BRIEF OF DEFENDANTS MATTHEW WAYNE, MIRIAM DELGADILLO,
LUCI ROGERS AND TAMMY WATSON - 16-cv-06994-PJH

1   implemented "new rules," and told him not to "dwell on the taxi stuff."  First, there will be no

2   evidence that Ms. Rogers had any role in Relator's employment.  She played no supervisory role

3   and worked in a completely different department.  None of this behavior was done with a retaliatory

4   motive in mind.  If there was no retaliatory motive, there was no retaliation.  *Id*.  Defendants'

5   evidence will show that the issues with the purchasing department had nothing to do with the special

6   education issue; that Ms. Rogers sent everyone excessive numbers of emails; and that the "new

7   rules" had actually always been in place, but they started actually being followed.  Furthermore, Ms.

8   Rogers telling Relator not to dwell on the taxi stuff is such a friendly way of saying it, that this

9   would not reasonably deter someone from engaging in protected activity.  There is no threat behind

10  that phrase.  It sounds more like two colleagues trying to get through the week than a retaliatory

11  warning.  Therefore, none of Ms. Rogers' conduct constituted retaliation.

12      Relator alleges that Ms. Watson sent him threatening emails and provided his phone number

13  to angry executives at Bell Transit.  While this conduct might signify a dysfunctional workplace,

14  there is no evidence that Ms. Watson had a retaliatory motive, or that these incidents would

15  reasonably deter someone from engaging in protected conduct.  Ms. Watson was not even in the

16  same department as Relator.  She had no control over any aspect of Relator's employment such as

17  his schedule or his compensation.  Therefore, her ability to retaliate in the first place was essentially

18  non-existent.

19                                              **CONCLUSION**

20      It should not be lost on this court that Relator's original Complaint contained scurrilous

21  allegation of "a widespread pattern of fraud and abuse" perpetrated by among others, the Defendants

22  in this case.  The allegations even accused Defendants from receiving "kickbacks" as an inducement

23  to make false claims.  The claims remaining are a pittance of what was alleged in the originally filed

24  Complaint.   Much of Relator's claims were so unsubstantiated that they were removed at the

25  pleading stage of this case.  The remaining claims barely stated enough to avoid total dismissal of

26  the Third Amended Complaint.  It is respectfully submitted that at the end of Relator's case, the

27  Court will wonder how we came to this point on this record.  Defendants' evidence and legal

28  authorities will leave no room for a reasonable jury to have a legally sufficient basis to find for

Jacobson Markham
Sacramento, California

TRIAL BRIEF OF DEFENDANTS MATTHEW WAYNE, MIRIAM DELGADILLO,
LUCI ROGERS AND TAMMY WATSON - 16-cv-06994-PJH

1   Relator in this case.  Therefore, Defendants will likely move for judgment as a matter of law.  Fed.

2   R. Civ. Proc. 50.

3              Dated:  January 12, 2023                Respectfully submitted,

4                                                      JACOBSON MARKHAM, L.L.P.

5

6                                                       /s/ Richard M. Jacobson
                                                       RICHARD M. JACOBSON, ESQ.

7                                                      JOSEPH T. URBANIC, ESQ.
                                                       Attorneys for Defendants
8                                                      MATTHEW WAYNE, MIRIAM GONZALEZ,
                                                       LUCI ROGERS and TAMMY WATSON
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jacobson Markham
Sacramento, California

TRIAL BRIEF OF DEFENDANTS MATTHEW WAYNE, MIRIAM DELGADILLO,
LUCI ROGERS AND TAMMY WATSON - 16-cv-06994-PJH

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jacobson Markham
Sacramento, California

## CERTIFICATE OF SERVICE

I, Sandra Gagnon, certify and declare as follows:

I am over the age of 18 and not a party to the within action.  My business address is 8950 Cal Center Drive, Suite 210, Sacramento, California 95826-3228.  My electronic service address is sgagnon@jacobsonmarkham.com.

I hereby certify that on **January 12, 2023,** I electronically filed the foregoing **TRIAL BRIEF OF DEFENDANTS MATTHEW WAYNE, MIRIAM DELGADILLO, LUCI ROGERS AND TAMMY WATSON** with the Clerk of the Court for the United States District Court for the Northern District of California, Oakland Division, by using the CM/ECF system. The Court's CM/ECF system will send an e-mail notification of the foregoing filing to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

Executed on **January 12, 2023** at Sacramento, California.

 /s/ Sandra Gagnon
SANDRA GAGNON

-1-

CERTIFICATE OF SERVICE (Civil Action No. 16-cv-06994-PJH)